David TEODORSKI, Appellee,

v.

Melinda Sue TEODORSKI, Appellant.

Superior Court of Pennsylvania.

Submitted May 10, 2004.
Filed Aug. 12, 2004.

Donald W. Grieshober, Erie, for appellant.

Frank L. Kroto, Jr., Erie, for appellee.

BEFORE: ORIE MELVIN, OLSZEWSKI, and POPOVICH, JJ.

OPINION BY OLSZEWSKI, J.:

¶1 Melinda Teodorski (appellant/wife) appeals from the order of the Court of Common Pleas of Erie County (Connelly, J.) denying nearly all of wife's exceptions to the report of the Master in Divorce. We affirm.

¶2 The trial court aptly described the procedural history of this case.

The parties were married on October 28, 1988[,] and eventually separated, but the date of actual separation is disputed. On January 12, 1995, [wife] filed a complaint for support and an order was issued on March 3, 1995[,] giving her an award of $290.33 per month. Also, on January 12, 1995, [wife] obtained a Final Protection from Abuse Order (hereinafter PFA). The parties were divorced on a bifurcated basis by decree on August 24, 1998.

On July 13, 1999, [David Teodorski (appellee/husband)] file[d] his Petition for Termination of Spousal Support, which was heard by Judge Michael M. Palmisano on August 6, 1999, and which resulted in an Order terminating support to be made effective in sixty (60) days on October 6, 1999. On November 14, 2002, [wife] filed her Petition for Attorney Fees, Court Costs, Costs of Litigation, Alimony *Pendente [sic] Lite* [APL], and Retro–Active Alimony which was *Pendente [sic] Lite.* On December 16, 2002, [wife] filed a Motion for Special Relief, signed by Judge Stephanie Domitrovich, and same was ordered to be heard by this Court at the same time as the other outstanding Petition. On December 18, 2002, a hearing was held before this court to address all of the issues contained in the Petition and Motion for Special Relief.

An injunction was granted by this Court, ordering [husband] to reinstate [wife] as a one-third beneficiary of his pension plan. Briefs were ordered and filed as to the remaining issues. This court issued an Opinion and Order dated March 7, 2003 which denied [wife's] motions to change the date of the divorce decree; denied the reinstatement and retroactive application of APL to [wife]; and denied [wife's] request for counsel fees at that time, but reserved the issue for the Master to award appropriate counsel fees later, along with issues relating to alimony and equitable distribution (i.e., the pension plan). [Wife] filed her Motion for Reconsideration as to the Court's decision on each issue on March 19, 2003, which was denied by this Court on April 22, 2003.

The Master's Hearing was held on May 12, 2003[,] before the court-appointed Master, Mary Alfieri Richmond, Esq. The Master's Report was then issued on August 8, 2003 . . . .

[Wife] took several Exceptions to the Master's Report including (1) an exception to the Master's determining the date of separation to be January 12, 1995, rather than February 28, 1998; (2) several exceptions relating to the equitable distribution of marital properly, specifically the 50/50 division ordered by the Master, the separation date as it relates to the pension plan as the only asset to be distributed, and several exceptions relating to the numbers used by Master in discussing the Qualified Domestic Relations Order (QDRO) to be prepared in accordance with the Master's recommendation; (3) an exception to the Master's failure to award alimony to [wife]; and (4) an exception to the Master's award of only $1,140.00 in counsel fees.

Trial court opinion, 11/6/04, at 1–3. The trial court denied all of wife's exceptions, except that the court increased the Mas-

ter's recommendation of attorney's fees to $2,310.00.

¶ 3 Wife presents four questions for our review.

(1) WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION IN DETERMINING THAT THE SEPARATION DATE FOR THE NUMERATOR OF THE COVERTURE FRACTION WITH REGARD TO THE PENSION PLAN OF APPELLEE, DAVID TEODORSKI, WAS JANUARY 12, 1995?

(2) WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION IN AWARDING APPELLANT, MELINDA SUE TEODORSKI, 50%, TIMES THE COVERTURE FRACTION, WITH REGARD TO THE PENSION PLAN OF APPELLEE, DAVID TEODORSKI?

(3) WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION IN FAILING TO AWARD ALIMONY TO APPELLANT, MELINDA SUE TEODORSKI?

(4) WHETHER THE TRIAL COURT COMMITTED AN ERROR OF LAW AND/OR AN ABUSE OF DISCRETION IN FAILING TO AWARD APPROPRIATE AND REASONABLE ATTORNEY FEES TO APPELLANT, MELINDA SUE TEODORSKI?

Appellant's brief, at 3. For the reasons stated below, we affirm.

1. The only property in the marital estate, and therefore the only property subject to equita-

## DATE OF FINAL SEPARATION

■ ¶ 4 The parties dispute the date of final separation. Wife argues that the date of final separation is February 2, 1998, the date the divorce complaint was filed. Husband agrees with the Master and the trial court, arguing that the date of final separation is January 12, 1995, the date wife obtained a protection from abuse (PFA) order against husband.

■ ¶ 5 Our standard of review is one of an abuse of discretion. "Absent an abuse of discretion, the trial court's findings of fact, if supported by credible evidence of record, are binding upon a reviewing court." *Wellner v. Wellner*, 699 A.2d 1278, 1280 (Pa.Super.1997) (citations omitted). Only property acquired "prior to the date of final separation" is marital property and therefore subject to equitable distribution.[1] 23 Pa.C.S.A. §§ 3501–02.

¶ 6 The date of final separation revolves around the definition of "separate and apart."

The Divorce Code defines "separate and apart" as follows: "Complete cessation of any and all cohabitation, whether living in the same residence or not." 23 Pa.C.S.A. § 3103. In *Thomas v. Thomas*, 335 Pa.Super. 41, 483 A.2d 945 (1984), this court held that "cohabitation" means "the mutual assumption of those rights and duties attendant to the relationship of husband and wife." *Id.*, at 47, 483 A.2d at 948.

Thus, the gravamen of the phrase "separate and apart" becomes the existence of separate lives not separate roofs (citations omitted). This position follows the trend of Pennsylvania case law in which a common residence is not a bar to showing that the parties live separate

ble distribution, is husband's pension.

and apart ... *Flynn v. Flynn*, 341 Pa.Super. 76, 81, 491 A.2d 156, 159 (1985). *Compare Mackey v. Mackey*, 376 Pa.Super. 146, 545 A.2d 362 (1988) (where parties had private living quarters, no public social life together, and had ceased sexual relations, the parties lived "separate and apart" despite the fact that they resided in the same house) *with Britton v. Britton*, 400 Pa.Super. 43, 582 A.2d 1335 (1990) (where parties jointly purchased a townhouse, shared a joint checking account, had a social life as husband and wife, share the same bedroom and resumed sexual relations, the court found the parties were not living "separate and apart.").

*Wellner*, 699 A.2d at 1281 (quoting *Schmidt v. Krug*, 425 Pa.Super. 136, 624 A.2d 183, 185 (1993), and *Gordon v. Gordon*, 436 Pa.Super. 126, 647 A.2d 530, 534 (1994) *rev'd on other grounds*, 545 Pa. 391, 681 A.2d 732 (1996)).

¶ 7 After a review of the record, we agree with the Master and the trial court that both parties lived separate and apart during the period between the entry of the PFA order (January 12, 1995) and the filing of the divorce complaint (February 2, 1998).[2]

¶ 8 First, husband and wife continued to have sexual relations between 1995 and 1998. In fact, a second child was born as the result of one of these encounters.

While wife testified that these sexual encounters occurred with relative frequency, husband testified that they had sex only once during the separation period. Clearly, the Master and the trial court believed husband's account. But even if the Master and court credited wife's account, mere sexual relations is insufficient to support reconciliation. *See Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550, 553 (1986) ("The ties that bind two individuals in a marital relationship involve more than sexual intercourse."). *See also Frey v. Frey*, 821 A.2d 623, 628 (Pa.Super.2003).

¶ 9 Wife also testified that husband provided for her needs and the needs of the children. Husband did indeed purchase a trailer home, pay alimony and child support (albeit only for one child), and provide other necessities for his children. These facts do not dictate a finding of reconciliation. In *Mackey v. Mackey*, 376 Pa.Super. 146, 545 A.2d 362 (1988), we found that a husband and wife lived separate and apart despite the fact that they lived under the same roof and shared expenses.

For certain, the parties have shared some common household expenses, occupied common living spaces, visited family members together and occasionally entertained mutual friends at their residence. However, Mr. Mackey should not be denied a unilateral divorce merely because he and his wife have demon-

---

**2.** The trial court made the following finding regarding the date of separation.

The master concluded that the overall testimony of both parties given the best possible interpretation does not rise to a reconciliation following the Final PFA in January of 1995. Even though the parties made minimal efforts at counseling, [husband] visited the house frequently, [husband] helped [wife] and his children with expenses including buying them a trailer, the parties had an ongoing sporadic sexual relationship and the parties filed joint tax returns listing various addresses of residence in

1994, 1995 and 1996, the Master determined that [husband] never returned to the household to live following the PFA and, thus, no reconciliation ever occurred. Therefore, the Master recommended that the date of the Final PFA on January 12, 1995 be considered the date of the parties' final separation. After reviewing the applicable law and the facts and testimony of this case, the Court agrees with the Master's recommendation and finds that January 12, 1995 was, in fact, the date of the parties' final separation.

Trial court opinion, 11/6/03, at 7.

strated a level of civility rarely seen in a divorce action.

*Mackey,* 545 A.2d at 365 (footnote omitted). The instant case is similar. Husband moved out of the marital home after the PFA order, but continued to financially assist his children, visit with his children, and occasionally visit with wife. Husband also provided financial assistance to wife via alimony payments.

¶ 10 Further, husband's agreement to marriage counseling does not imply that husband and wife reconciled to such an extent as to declare that the parties are no longer living separate and apart. Doing so would go against public policy. The legislative intent of the Divorce Code is to "[e]ncourage and effect reconciliation and settlement of differences." 23 Pa.C.S.A. § 3102(a)(2). *See also Mackey,* 545 A.2d at 365 n. 6.

¶ 11 Wife argues that the PFA order she filed against husband did not show an intent to separate, and that the only evidence of an intent to separate was husband's filing of the divorce complaint in 1998. It is true that there "must be an independent intent on the part of one of the parties to dissolve the marital union before the three [now two] year period commences. This intent must be clearly manifested and communicated to the other spouse." *Sinha v. Sinha,* 515 Pa. 14, 526 A.2d 765, 767 (1987). We believe that, in this case, a protection from abuse order filed against a spouse evidences such an intent. *Cf. McBride v. McBride,* 335 Pa.Super. 296, 484 A.2d 141 (1984).

¶ 12 We therefore believe that the trial court and the Master did not abuse their discretion in fixing January 12, 1995, as the date of final separation. Accordingly, the coverture fraction used to determine the marital portion of the pension plan is appropriate.

## WIFE'S SHARE OF PENSION PLAN

■ ¶ 13 Next, wife argues that the trial court improperly distributed the marital portion of husband's pension plan. The Master and trial court gave wife 50 percent of the marital portion of the pension plan. Wife complains that equitable distribution demands that she receive 60 percent.

■ ¶ 14 Our standard of review is well settled.

The trial court has broad discretion in fashioning equitable distribution awards and we will overturn an award only for an abuse of that discretion. The Divorce Code states that the trial court

Shall ... equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties in such proportions and in such manner as the court deems just after considering all relevant factors ....

23 Pa.C.S. § 3502(a). In assessing the propriety of an equitable distribution scheme, our standard of review is whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a) ] and the avowed objectives of the Divorce Code, that is, to effectuate economic justice between the parties and insure a fair and just determination of their property rights.

*Anzalone v. Anzalone,* 835 A.2d 773, 785 (Pa.Super.2003) (citations omitted). "Moreover, the trial court has 'the authority to divide the award as the equities presented in the particular case may require.'" *Id.* (quoting *Drake v. Drake,* 555 Pa. 481, 725 A.2d 717, 727 (1999)). Fur-

ther, when a court divides the marital property, it must do so only after considering "all relevant factors," including eleven specific factors listed in the Divorce Code. 23 Pa.C.S.A. § 3502(a).

¶ 15 The only property subject to equitable distribution is the marital portion of husband's pension. The trial court considered the enumerated factors including wife's current poor health, educational needs, source of income, and ability to become employed. Trial court opinion, 11/6/03, at 8–9. But the trial court relied upon the deferred nature of the distribution to determine an equitable distribution. Wife would not receive money from the pension at the time of separation and divorce because, as the trial court stated, the pension "will necessarily not be available to either party until plaintiff retires in the future." *Id.*, at 9. The trial court stated that the economic situation between the two parties at the time of husband's retirement will likely "be very similar in terms of monthly incomes." *Id.* Given this rationale, we are unwilling to say that the trial court abused its discretion in ordering the 50 percent split of the pension at this time.

## ALIMONY

■■■■ ¶ 16 Next, wife argues that the trial court abused its discretion in denying her alimony.

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that "[t]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." Alimony "is based upon reasonable needs in accordance with the lifestyle and standard of living established

by the parties during the marriage, as well as the payor's ability to pay." Moreover, "[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill."

*Moran v. Moran,* 839 A.2d 1091, 1096–97 (Pa.Super.2003) (citations omitted) (emphasis in original).

> In determining whether alimony is necessary, and in determining the nature, amount, duration and manner of payment of alimony, the court must consider numerous factors including the parties' earnings and earning capacities, income sources, mental and physical conditions, contributions to the earning power of the other, educations, standard of living during the marriage, the contribution of a spouse as homemaker and the duration of the marriage.

*Anderson v. Anderson,* 822 A.2d 824, 830–31 (Pa.Super.2003) (citations omitted). *See also* 23 Pa.C.S.A. § 3701.

¶ 17 Wife argues that she is entitled to $500.00 per month "payable on an indefinite basis." Appellant's brief, at 26. Wife complains that her disability prevents her from becoming gainfully employed. While the trial court gave weight to wife's permanent disability and lack of current employability, the trial court also considered a number of other factors.

> [T]here are also many factors which negate [husband's] obligation to provide alimony to [wife]. First and foremost, is the fact that [husband] currently has custody of the parties' two children and is responsible for caring for them. Also, as the Master noted in the Master's Report: [wife] has superior education and technical training (although a less

regular employment history); there is no indication that she contributed overly significantly to the marital estate; she did not make extraordinary contributions as the homemaking spouse; was not a factor in increasing [husband's] earning capacity during the marriage; and other than the fact that [husband] owns a home while [wife] rents, the parties' respective standard of living appears close to what they both experienced prior to and during the marriage. *Master's Report* at p. 12.

Trial court opinion, 11/6/03, at 12.

¶ 18 To support her claim for indefinite alimony, wife cites to seven Superior Court cases. Most of the cases she cites permit long term or indefinite alimony. What distinguishes each of the cases, however, is the length of the marriages. Wife and husband were married on October 28, 1988. They separated on January 12, 1995, and divorced on August 24, 1998. For all intents and purposes, the marriage lasted little more than six years. The marriages in all of wife's proffered cases lasted much longer. *Geyer v. Geyer*, 310 Pa.Super. 456, 456 A.2d 1025 (1983) (forty-two years); *Schneeman v. Schneeman*, 420 Pa.Super. 65, 615 A.2d 1369 (1992) (twenty-two years); *Verdile v. Verdile*, 370 Pa.Super. 475, 536 A.2d 1364 (1988) (twenty-eight years); *Teribery v. Teribery*, 357 Pa.Super. 384, 516 A.2d 33 (1986) (thirty-one years); *Morschhauser v. Morschhauser*, 357 Pa.Super. 339, 516 A.2d 10 (1986) (twenty-nine years); *Miller v. Miller*, 352 Pa.Super. 432, 508 A.2d 550 (1986) (thirty years); *Pacella v. Pacella*, 342 Pa.Super. 178, 492 A.2d 707 (1985) (fifteen years).

¶ 19 The trial court, considering the length of the marriage (six years) and the number of years that husband *had previously paid* spousal support (four years and nine months), denied wife's petition for additional alimony. We find no abuse of discretion. *See DeMarco*, 787 A.2d at 1081 ("[R]equiring Husband to pay twenty years' worth of alimony following a twelve-year marriage appears inequitable considering Husband's payment of alimony and child support over a seventeen-year period . . .").

## ATTORNEY'S FEES

¶ 20 Finally, wife claims that the ultimate award of $2,310.00 in attorney's fees ($1,170.00 more than the Master's original recommendation) is insufficient and unreasonable. She argues that the award should have been $8,000.00, 65 percent of the total accrued attorney's fees.

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.
>
> \* \* \*
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.

*Anzalone*, 835 A.2d at 785–86 (citations omitted). "Counsel fees are awarded only upon a showing of need." *Harasym v. Harasym*, 418 Pa.Super. 486, 614 A.2d 742, 747 (1992). Further, "in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder." *Verdile*, 536 A.2d at 1369 (citation omitted).

¶ 21 According to the trial court, wife's attorney's fees totaled $7,740.00. $1,920.00 of that total "is rightly excluded from consideration, as this Court has previously ruled that such matters were not undertaken reasonably." Trial court opinion, 11/6/03, at 15. Of the remaining $5,820.00, $1,140.00 was for matters relating to the injunction filed by wife to have wife's name added as a beneficiary to husband's pension plan. The Master recommended that only this $1,140.00 be awarded to wife. The remaining $4,680.00 is for other work that the trial court found to be reasonable.[3] In addition to the Master's recommendation, the trial court awarded wife one-fourth of the remaining amount, or $1,170.00. Therefore, the attorney's fees that wife is responsible for is $3,510.00. This amount is approximately 45 percent of the original $7,740.00, and 60 percent of the fees attributed to legal work that the trial court found reasonable.

¶ 22 The trial court, being aware of the respective financial positions of wife and husband, awarded $1,170.00 more than the Master for a total award of $2,310.00. The trial court noted that

> in order to promote fair administration of justice by enabling the defendant spouse [wife] to maintain or defend the divorce action without being placed at a financial disadvantage, defendant should have been awarded an additional $1,170.00 in counsel fees for reasonable actions undertaken in defending the divorce action.

Trial court opinion, 11/6/03, at 16. This is a reasonable rationale. Accordingly, we find that the trial court did not abuse its discretion in awarding only $2,310.00 in attorney's fees to wife.

**CONCLUSION**

¶ 23 Based upon the above analysis, we find that the trial court did not abuse its discretion in: (1) fixing the date of final separation; (2) awarding wife a 50 percent share of the marital portion of husband's pension; (3) denying wife additional alimony; and (4) awarding wife $2,310.00 in attorney's fees. Accordingly, we affirm the order of the Court of Common Pleas of Erie County.

¶ 24 Order AFFIRMED.

---

**3.** In reviewing the award of attorney's fees we will not disturb the lower court's findings regarding the reasonableness of the work.