J-A26040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIEL WATERSTONE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KATHLEEN WATERSTONE | |
| Appellant | No. 444 MDA 2014 |

Appeal from the Decree February 7, 2014
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 40916-2008

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 13, 2014**

Kathleen Waterstone ("Wife") appeals from the equitable distribution award entered on March 15, 2013, in the Lackawanna County Court of Common Pleas following entry of a final divorce decree on February 7, 2014. The trial court awarded Wife sixty percent of the marital and non-marital assets, and allocated to Wife forty percent of the marital debt.  It further awarded Daniel Waterstone ("Husband") forty percent of the marital and non-marital assets, and allocated to Husband sixty percent of the marital debt.  The court denied Wife's request for counsel fees and ordered Husband to pay alimony to Wife in the amount of five hundred dollars per month for a period of five years post-divorce.  We affirm.

The trial court set forth the factual and procedural history as follows:

[T]he parties were married on August 28, 1996 in Las Vegas, State of Nevada.  There were no children born to this marriage.

[Husband] filed a [c]omplaint in [d]ivorce on July 21, 2008 in Lackawanna County, Pennsylvania. On January 4, 2010, [Wife] filed and [a]nswer and [c]ounterclaim to [Husband's] [c]omplaint, setting forth a claim for alimony. Discovery was conducted and in due course the divorce was petitioned for the appointment of a Master. An [o]rder appointing a divorce Master, to wit: Honorable Carlon M. O'Malley, was entered on August 16, 2010. On November 29, 2011, a Master's hearing was conducted.

At the time of the hearing, [Husband] was fifty-six (56) years old, in good health and employed in the State of Vermont, earning approximately $84,000.00 annually, plus bonuses. [Husband] earned a Bachelor's Degree in mechanical engineering in 1979 and a Master's Degree in engineering in 1986. During the marriage, [Husband] was the primary breadwinner and paid the normal household bills and expenses.

At the time of the Master's hearing, [Wife] was sixty-seven (67) years old and a retired homemaker. [Wife] has a monthly $654.00 income from her Social Security, a monthly $50.00 TIAA Kreff payment and a monthly $152.60 payment from her first husband's pension, for a total monthly income of $856.66. [Wife], who possesses a high school diploma, has a sporadic work history, having left the job market in 1970 during her first marriage, and reentering again in 1990 following her first divorce, and working through 1998 in a series of temporary secretarial jobs.

[Wife] suffers from health issues, including but not limited to osteoporosis, significant bone loss in her hips and spine and irritable bowel syndrome. In the past two (2) years, [Wife] has had three (3) surgeries. During the course of the marriage, [Wife] relocated with [Husband], as a result of his change of jobs, three (3) times, from New Jersey to Rhode Island in 1997; from Rhode Island to Lowville, NY in 1997; and from Lowville, NY to Old Forge, PA in 2003.

During the parties' marriage, [Wife] received two (2) inheritances, one from her Mother in 2000 in the amount of approximately $100,000.00 and a second from her Father in 2006 in the amount of approximately $40,000.00. [Wife] kept the inheritances in separate accounts from [Husband], except for the contribution of one-half of the down payment and closing costs for the marital home located in Old Forge, Pennsylvania, a

financial gift to [Husband] and a trip to Alaska. [Wife] testified the monies received from her mother's inheritance are almost depleted since it [sic] was used for living expenses. As to her father's inheritance, [Wife] testified she used the money to purchase a 2007 Toyota Corolla, which was titled solely in her name, and placed the remainder of the funds in a [c]ertificate of [d]eposit.

Upon mutual agreement of the parties, the parties maintained separate accounts during the marriage, with the exception of a joint M&T checking account. Following their separation, the parties sold the marital home on July 24, 2009 for $179,000.00, and realized a net profit of $38,515.83. Besides the net proceeds from the sale of the marital residence, there is $2,396.19 in joint marital assets, comprised of a TD Ameritrade Check and stock account, three (3) Amica checks, and the M&T checking account.

[Husband] possessed two (2) investment accounts during the course of the marriage, namely a TD Ameritrade IRA with a date of separation value of $85,000.00; and a John Hancock Venture Annuity with a date of separation value of $13,379.00. There was no testimony from either party as to the date these accounts were started, or how much they may have increased or decreased during the course of the marriage. [Husband] did withdraw funds from these retirement accounts to pay on the mortgage on the marital home for a period of seven (7) months, totaling $7,700.00, following the parties separation. [Husband] allowed some the funds to cover his living expenses, searching for new employment and relocating to Vermont for his new position.

The marital debt consists of three (3) credit cards, acquired during the marriage, all in the [Husband's] name and used primarily by [Husband]. The debt consists of a HSBC Master Card with a balance of $5,000.00, USAA Master Card with a balance of $16,000.00 and Cabela's Visa Card with a balance of $5,000.00. [Husband] testified that he used the credit cards for work on his vehicles, with the exception of $5,000.00 which he used to fund a new roof for the marital residence. [Wife] testified that [Husband] used the credit cards for gambling purposes as well.

On or about August 22, 2012 the Master issued his Report and Recommendations, wherein the following recommendations were entered:

(1) as to the marital assets, [Husband] was awarded 40%, totaling $16,364.80, and [Wife] was awarded 60%, totaling $24,547.22;

(2) as to the non-marital assets, [Husband] was awarded 40%, totaling $36,271.60, and [Wife] received 60%, totaling $54,407.40;

(3) as to the marital debt, [Husband] be allocated 80%, totaling $20,800.00, and [Wife] be allocated the remaining 20%, totaling $5,200.00;

(4) [Wife] was awarded alimony in the amount of $2,000.00 per month for eight (8) years following the entry of the Divorce Decree; and

(5) [Wife] was awarded $5,000.00 in counsel fees.

[Husband] filed exceptions to the Master's Report and Recommendations on August 31, arguing:

(1) the Master erred in not recommending a 50/50 split of the marital property to the parties;

(2) the Master erred in recommending that [Husband] be awarded 40% of the marital assets and consequently [Wife] be awarded 60% of the marital assets as this was not the most appropriate way to effectuate economic justice between the parties;

(3) the Master erred in not taking into account [Wife's] substantial inheritances as well as the lump sum payment of approximately $29,400.00 due to the pension from her first husband;

(4) the Master erred in finding that [Wife] gave up her career to become a homemaker and take care of Plaintiffs day-to-day needs. [Wife] removed herself from the work force in 1998 and while she suffers from some health ailments is not disabled;

(5) the Master erred in not taking into account that [Wife] was verbally abusive towards [Husband] for the last five

- 4 -

(5) years of the marriage, and was emotionally abusive towards [Husband] for the last three (3) years;

(6) the Master erred in recommending that 80% of the marital debt be allocated to the [Husband];

(7) the Master erred in not recommending a credit in the amount of $10,000.00 for the 2007 Toyota Corolla that [Wife] retained;

(8) the Master erred in recommending alimony;

(9) the Master erred in recommending alimony in the amount a $2,000.00 for a period of eight (8) years;

(10) the Master erred in recommending alimony in light of the equitable distribution award, with the entire scheme being not the best method of effectuating economic justice between the parties;

(11) the Master erred in recommending counsel fees in the amount of $5,000.00 where [Wife] offered no showing of need nor was their testimony of services rendered; and

(12) the Master erred in recommending counsel fees in light of the equitable distribution scheme and alimony as the equitable distribution and alimony will more than provide for [Wife's] ability to pay her counsel fees.

Accordingly, the matter was scheduled for oral argument in front of [the trial court] on January 17, 2013. Following oral argument, the [c]ourt requested a settlement conference, which was conducted on February 8, 2013.

Trial Ct. Op., 3/15/13, at 1-5.

The parties were unable to resolve their issues at the settlement conference. Therefore, the trial court considered the exceptions raised by Husband. The trial court denied most of Husband's exceptions. It found, however that: (1) the marital debt should be distributed as sixty percent to Husband and forty percent to Wife; (2) Wife was entitled to alimony only in

the amount of $500.00 per month for five years; and (3) Wife was not entitled to an award of counsel fees. This timely appeal followed.[1]

Wife presents the following issues for our review:

1.    Whether the [t]rial [c]ourt abused its discretion by not adopting the Master's [r]ecommendation to divide the marital debt eight (80%) percent to [ ] Husband and twenty (20%) to [ ] Wife?

2.    Whether the [t]rial [c]ourt abused its discretion by dividing the marital debt sixty (60%) percent to [ ] Husband and forty (40%) to [ ] Wife?

3.    Whether the [t]rial [c]ourt below abused its discretion by not adopting the Master's [r]ecommendation to award [ ] Wife alimony in the amount of two thousand ($2,000) dollars per month for a period of eight (8) years?

4.    Whether the [t]rial [c]ourt abused its discretion in awarding [ ] Wife alimony in the amount of five hundred ($500.00) dollars per month for a period of five (5) years?

5.    Whether the [t]rial [c]ourt abused its discretion by not adopting the Master's [r]ecommendation to award [ ] Wife counsel fees in the amount of five thousand ($5,000.00) dollars?

6.    Whether the [t]rial [c]ourt abused its discretion by not awarding any counsel fees to [ ] Wife?

Wife's Brief at 6 (issues reordered for ease of disposition).

Wife's first and second issues are interrelated, therefore, we address them together. In these issues, Wife essentially challenges the trial court's modification of the Master's recommendation as to the distribution of the

---

[1] The trial court did not order Wife to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925.

marital debt. Specifically, Wife claims the court erred in concluding that all of the parties' debt should be characterized as marital debt. Wife's Brief at 10. Wife avers that all but $5,000.00 of the parties' debt was, in fact, debt attributable to Husband only and incurred by him to pay for repairs on two cars owned by him, and for gambling at casinos. *Id.* Wife argues that the court's award does not effectuate economic justice because the disparity of the income between the parties necessitates that Wife be given a larger share of the marital property to support herself and it is "unreasonable to take away part of that equitable distribution of assets to pay a portion of debt that has solely benefitted [Husband]." *Id.* at 11.

A "trial court has broad discretion in fashioning equitable distribution awards." *Teodorski v. Teodorski*, 857 A.2d 194, 199 (Pa. Super. 2004). This Court "will overturn an award only for an abuse of that discretion." *Id.*

Pursuant to the Divorce Code, the trial court:

> Shall . . . equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties in such proportions and in such manner as the court deems just after considering all relevant factors . . . .

*Id.* (quoting 23 Pa.C.S. § 3502(a)). In assessing the propriety of an equitable distribution scheme:

> [O]ur standard of review is whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion. Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom, against the provisions of 23 P.S. § 402(d) [now 23 Pa.C.S. § 3502(a)] and the avowed objectives of the Divorce

Code, that is, to effectuate economic justice between the parties and insure a fair and just determination of their property rights.

*Id.*

Pursuant to 23 Pa.C.S. § 3502, the factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a).

Further, "[i]n determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole." ***Biese v. Biese***, 979 A.2d 892, 895 (Pa. Super. 2009).

We conclude Wife's first and second issues must fail. Our review of the trial court's opinion reveals that the trial court considered the Section 3502 factors when reviewing the Master's recommendation and in response to Husband's exceptions. ***See*** Trial Ct. Op. at 1-4, 7-11. With respect to allocation of the marital debt, the trial court noted it was aware that Husband incurred the "majority of the marital debt." ***Id.*** at 10. However, it also correctly noted that because the debt was incurred during the marriage it is subject to inclusion in the equitable distribution scheme. ***Id.*** Accordingly, in order to effectuate economic justice, the trial court determined that Wife "should assume a greater share of the marital debt than initially recommended by the Master in order to offset [Wife's] disproportionate share of the marital estate." ***Id.*** The trial court did not abuse its discretion in taking into consideration the entire equitable distribution scheme—including its division of the marital assets—in determining the percentage of the marital debt to allocate to Wife. ***See Teodorski***, 857 A.2d at 199; ***Biese***, 979 A.2d at 895.

We next address Wife's third and fourth issues together, as they are also interrelated. Wife claims the trial court abused its discretion in not adopting the Master's recommendation that she be awarded alimony in the amount of $2,000.00 per month for eight years and instead awarding her $500.00 per month for five years. Wife's Brief at 11-16. She claims that this downward modification constitutes an abuse of discretion because the trial court failed to consider that much of the equitable distribution award to wife is comprised of money that may not be readily available to Wife or may be further reduced by taxes or penalties. *Id.* at 12. Specifically, Wife notes she was awarded funds from Husband's "IRA which cannot be reached until [Husband] reaches a certain age and an Annuity, which also may be restricted" and that both sources of income may be subject to income tax. *Id.* Next, Wife argues that the trial court misapplied the law by considering the support guidelines, Pa.R.C.P. 1910.16-6(e), when it determined the amount of alimony to award Wife. *Id.* at 12-13. Last, Wife claims the court erred in neglecting to consider Wife's expenses, including real estate taxes, homeowner's insurance, utilities, food, and health insurance, and in failing to reach economic justice between the parties, when fashioning her alimony award. *Id.* at 13-16. Wife is not entitled to relief.

We review an award of alimony for an abuse of discretion. *See Teodorski*, 857 A.2d at 200. Pursuant to 23 Pa.C.S. § 3701, courts should consider the following factors in determining an alimony award:

**(b) Factors relevant.--**In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph,

"abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. § 3701(b).

In addressing Husband's exceptions to the Master's report and concluding that the Master's recommendation with respect to alimony should be modified downward, the trial court opined:

The Master's finding of the award of alimony was based upon [Husband's] greater earning capacity, [Wife's] health ailments, the amount of time [Wife] has been removed from the workforce, the length of the marriage, [Wife']s contribution to the earning power of [Husband] as a homemaker, the disparity of education between the parties and the upper middle class standard of living during the marriage compared to Wife's standard of living post-separation of poverty level, earning $10,300.00 per year on Social Security and pension.

The record reflects that the Master considered the statutory factors delineated in Section 3701 pertaining to alimony, including but not limited to the parties' earnings and earning capacities, the physical condition of the parties, the parties' sources of income, the duration of the marriage and the parties' standard of living during the marriage.

[Wife] is 67 years old and suffers from health ailments. [Wife], who possesses a high school diploma, had a sporadic work history, having left the job market in 1970 during her first marriage, and reentering again in 1990 following her divorce, and working through 1998 in a series of temporary secretarial jobs. [Wife] has been out of the workforce for the past fourteen

- 12 -

(14) years since the parties agreed that [Wife] would be a full-time homemaker. The record clearly supports that [Wife] is unable to reenter the workforce and support herself through appropriate employment.

However, this [c]ourt does not accept the Master's finding as to the amount of the award and duration. The recommended award far surpasses [Wife's] reasonable needs as determined by her monthly expenses. The equitable distribution scheme provides that [Wife] is to receive $63,354.62, after deducting her modified percentage of the martial debt allocation. Additionally, [Wife] has a total monthly net income of $856.66 and is expected to realize approximately $29,400.00 from her first husband's pension.

[Wife] testified that her monthly expenses include living expenses and a mortgage payment in the amount of $344.00 per month for a home she purchased post-separation. Generally, one's monthly mortgage payment should not exceed 28% of his/her gross monthly income. This debt-to-income ratio, often used by mortgage lenders, is reflected in Pennsylvania support law. Pursuant to Pa.R.C.P. 1910-16.6(e), if the obligee is living in the marital residence and the mortgage payment exceeds 25% of the obligee's net income, the court may direct the obligor to assume 50% of the excess amount as part of the total support award.

Applying these principles, 28% of [Wife's] net monthly income is $239.68 and 25% is $214.00. Therefore [Wife's] monthly mortgage payment of $344.00 per month exceeds the recommended 28% and/or 25% of [Wife's] monthly income.

In conclusion, alimony is warranted to meet [Wife's] reasonable needs. However, given the expectancies and inheritances of [Wife] and the relative assets of [Wife], the recommended amount and duration of alimony shall be decreased to $500.00 per month for five (5) years. This modification is based upon the reasonable needs of [Wife] in accordance with the lifestyle and standard of living established by the parties during the marriage, the length of the marriage, the distribution of assets, as well as the payor's ability to pay.

Trial Ct. Op. at 12-13.

- 13 -

The trial court did not abuse its discretion in determining that, though Wife was entitled to an award of alimony, the Master's recommended award was excessive. In fashioning its award, the trial court thoroughly considered the relevant Section 3701 factors and its mandate to ensure Wife's reasonable needs are met. **See Teodorski**, 857 A.2d at 200. To the extent Wife claims the trial court erroneously relied on Pa.R.C.P. 1910-16.6(e) in calculating the support award, we disagree. The trial court's opinion merely reflects that it considered the debt-to-income ratio calculation commonly used by mortgage lenders, and reflected in Pennsylvania support law, as one factor in ascertaining Wife's reasonable support requirements.

For Wife's last two issues she claims the trial court abused its discretion granting Husband's exceptions to the Master's recommendation that Wife be awarded $5,000.00 for counsel fees, based on the trial court's determination that no value had been established. Wife's Brief at 16. Wife claims the Master, "who had first hand knowledge and observation of the work product produced and the effort put into the case by the attorneys, made a determination of the value" and "weighed the evidence and the credibility regarding the claims." **Id.** at 17. Wife's claims do not merit relief.

This Court reverses a determination of counsel fees only for an abuse of discretion. **Anzalone v. Anzalone**, 835 A.2d 773, 786 (Pa. Super. 2003). "Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to

pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Id.* Further, courts award counsel fees "only upon a showing of need." *Id.* This Court has found documentation of the amount of counsel fees incurred and services performed "is required because a factor to consider in an award of counsel fees is the 'value of the services rendered.'" *Id.*

The trial court concluded that Wife was not entitled to counsel fees because evidence of the value of the services rendered to her is not contained in the record. Trial Ct. Op. at 14. Our review of the record confirms that Wife did not offer any evidence—written or testimonial—of the value of the services her attorney performed during the course of this matter, as is required in order for a party to be awarded counsel fees. *See Anzalone*, 835 A.2d at 786. Accordingly, Wife's fifth and sixth issues fail.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/13/2014</u>

- 15 -