J-A04012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SARAH E. BRKOVICH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MILES J. BRKOVICH, | |
| Appellant | No. 676 WDA 2014 |

Appeal from the Order March 27, 2014
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): 2351 OF 2008-D

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 21, 2015**

Miles J. Brkovich ("Husband") appeals from the March 27, 2014 order dismissing his exceptions to the master's report and recommendations and entering an award of equitable distribution consistent with that report.  We affirm.

On December 18, 2008, Sarah E. Brkovich ("Wife") instituted a divorce action against Husband and sought equitable distribution, alimony, counsel fees and costs.  On June 20, 2012, Husband filed an answer and counterclaim seeking equitable distribution.  The divorce and economic matters were bifurcated and the divorce was granted on September 12, 2012.

_____

* Retired Senior Judge assigned to the Superior Court.

Wife subsequently filed a petition for bankruptcy in the Bankruptcy Court for the Western District of Pennsylvania. That court entered an order directing the Court of Common Pleas of Westmoreland County to determine whether there were any pending claims for alimony, maintenance, support, or equitable distribution so that a dischargeability determination could be made. Pursuant to Husband's request, James R. Silvis, Esquire, was appointed as master. On July 17, 2013, he presided over a hearing on claims of equitable distribution, alimony *pendente lite*, and attorneys' fees.

The following facts were adduced at the hearing. The parties were married on January 20, 2006, and separated less than three years later on December 13, 2008. Both parties have previously been married, the marriages ended in divorce, and Husband has a nineteen-year-old son from his first marriage. Husband is a certified public accountant who, at the time of the hearing, earned approximately $52,000 per year. He had previously earned as much as $83,000 per year as a company controller but was released from that employment when the company was sold. Husband lives in the home that he purchased prior to the marriage and which the couple shared during the marriage. He also owns separate property consisting of two rental properties. Both parties have IRA/retirement accounts of roughly equal value.

Wife is educated and trained as a secretary/administrative assistant and previously worked as a customer service provider for Unisom earning

approximately $11.00 or $12.00 per hour. Her most recent employment was part-time as an administrative assistant at Westmoreland County Community College, but she ceased employment shortly after the marriage. The master assigned an earning capacity of $24,000 per year to Wife. Initially, upon separation, Wife remained in the marital home owned by Husband, but she subsequently vacated it and moved to an apartment. Wife's landlord testified that she was seven months in arrears on her rent. At the time of the hearing, Wife was unemployed, receiving food stamps, and on medical assistance. Her physician, Dr. Walter Byrd, provided a report stating that Wife is disabled due to severe depressive disorder and anxiety and that she would not be able to return to work in an unrestricted capacity until September 2014 at the earliest.

The master filed his report on October 1, 2013, in which he recommended that Wife's request for alimony *pendente lite* be denied. Regarding equitable distribution, the master recommended that each party retain the personal property now in his or her possession; that each party retain his or her IRA accounts or pension plans; and that Wife contribute $10,000 towards the credit card debt to be paid in monthly installments of $150 beginning in November 2014, subject to the ruling of the Bankruptcy

Court concerning Wife's obligation to pay any of the credit card debt.[1] It was recommended that Husband pay $750 and Wife $296 of the $1,046.00 balance of the court reporter and master's fees and that Husband contribute $1200 towards Wife's outstanding counsel fees.

Both parties filed exceptions and briefs, and oral argument was held on December 10, 2013. By order of December 19, 2013, the court denied all exceptions after determining that the master properly applied the 23 Pa.C.S. § 3502 equitable distribution factors in valuing and distributing the marital debt; correctly applied 23 Pa.C.S. § 3701's alimony considerations; and that the master reached an equitable result in awarding Wife counsel fees.

On January 7, 2014, Husband filed a motion for sanctions charging that Wife's counsel illegally obtained a copy of the hearing transcript and utilized it in writing Wife's brief and preparing for oral argument in opposition to Husband's exceptions. After a hearing on the motion, Wife's counsel provided Husband with a copy of the transcript, and the trial court permitted Husband to submit an amended brief in support of his previously-filed exceptions. On February 11, 2014, Husband's counsel was given permission to withdraw. Thereafter, Husband filed a self-styled *pro se*

_____

[1] The certified record was supplemented to reflect that, on May 27, 2014, the Bankruptcy Court determined that Wife's $10,000 contribution to marital debt was not dischargeable in bankruptcy.

motion for reasonableness in which he was critical of the master and both attorneys and sought damages, *inter alia*, for Wife and her counsel's alleged libel and slander. **See** Motion for Reasonableness, 2/13/14. Husband subsequently withdrew the motion and filed a supplemental brief in support of his exceptions. On March 27, 2014, the trial court denied the exceptions.

Husband appealed, complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, and the trial judge issued his Rule 1925(a) opinion. Husband presents three issues for our review:

1. Did the lower court err:

   (a) When it required that Husband pay the bulk of marital debt incurred to purchase goods and services enjoyed both by him and by Wife?

   (b) By miscalculating the amount of the marital debt?

2. Did the lower court erroneously award counsel fees in the absence of any showing of actual need?

Appellant's brief at 7.

"Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." **Busse v. Busse**, 921 A.2d 1248, 1257 (Pa.Super. 2007).

Title 23 Pa.C.S. § 3502(a) sets forth the relevant factors when fashioning equitable distribution awards:

[T]he trial court must consider the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation or marital property, value of each party's separate property; standard of living established during the marriage; economic circumstances of each party and whether the party will be serving as custodian of any dependent children.

23 Pa.C.S. § 3502(a)(1-11). The weight accorded the various factors is dependent on the circumstances and is a matter within the court's discretion. *Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa.Super. 2004); *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa.Super. 1997) (*en banc*).

Husband alleges first that the master and the trial court miscalculated the amount of the marital debt. He maintains that the marital debt was $93,000, not the $76,235.64 calculated by the master and accepted by the court below. The error stems, according to Husband, from the master's refusal to treat the $26,361.00 balance on his car loan from the Clearview Federal Credit Union as marital debt. In support of his contention, Husband argues that if the debt for his car is not Wife's responsibility because he retained it, it is internally inconsistent to give Wife credit for the reduction in the mortgages on Husband's properties that he retained.

- 6 -

The record reveals that, with the exception of the loan on Husband's vehicle, the master accepted Husband's self-created document listing the marital debts. It was undisputed that both Husband and Wife purchased cars during the marriage. Wife purchased a used 2004 Hyundai Sonata for $13,000 with funds that she brought into the marriage from the sale of her former residence, and she retained the vehicle following separation. Husband purchased a $30,000 GMC Acadia during the marriage with financing he secured through the credit union. Husband retained that car following separation.

Husband's car was personal property acquired during the marriage and thus, a marital asset. The outstanding balance on the car loan was marital debt. Husband retained that asset after parties' separation, and the master recommended that each party retain the personal property in his or her possession. Husband did not file an exception to that recommendation. Since Husband kept the car, we find no abuse of discretion in assigning him the balance of the debt on that vehicle. Indeed, Husband could not keep the asset and reasonably expect Wife to shoulder the debt on that asset.[2] This claim fails.

Next, Husband contends that it was an abuse of discretion to require Husband to pay the bulk of marital debt that was incurred to purchase goods

_____

[2] Husband had the option to sell the car and divide the net proceeds between the parties. He chose to retain the vehicle.

and services enjoyed by both parties. He argues that the allocation of the debt cannot be justified by his alleged mismanagement of the couple's finances. Moreover, although the master found that he purchased a motorcycle on a credit card, Husband points out that he produced documentation that it was paid for by check. Although the trial court dismissed the factual error regarding the motorcycle as inconsequential to the equitable distribution of the marital debt, Husband maintains that the error contributed to the master's finding that Husband placed inappropriate items on credit cards and mismanaged finances. Appellant's brief at 22. For the reasons that follow, we find no merit in Husband's claim.

The record reveals the following. Wife testified that Husband made all of the financial decisions for the couple and that he used credit cards and transferred balances from one credit card to another to obtain lower interest rates, all of which was conceded by Husband. At Husband's direction, Wife placed daily household expenditures on a credit card. Wife also testified that large sums were spent on entry fees, travel, hotel, and food expenses incurred when Husband participated in marathons, his goal being to run in a marathon in all fifty states. Husband's responded that, since Wife traveled with him to marathons and incurred the cost of the lodging and food expended for that purpose, she should bear responsibility for her portion of the expenses.

The trial court found that the master properly applied the eleven factors identified in 23 Pa.C.S. § 3502(a). There were virtually no marital assets and equitable distribution consisted largely of allocation of the marital debt. The master considered the assets of each of the parties and relied heavily on their respective earning capacities. The record revealed that Husband owned the home in which the couple resided during the marriage and two additional rental properties, while Wife did not own any real property. Husband's earning capacity was determined to be $50,000; Wife's earning capacity was calculated at $24,000. In addition, it was undisputed that Wife was disabled due to major depressive disorder until September 2014 at the earliest. The master properly considered the impact of Wife's disability when considering her employability, her future acquisition of assets and income, and her decreased standard of living.

The trial court concluded that, since there was "little evidence presented concerning why the marital debt was incurred and what purchases were made," there was scant proof for the court to rely on in deciding Husband's exceptions. Trial Court Opinion, at 9 (quoting from Master's report at 6). Responsibility for the marital debt was largely a credibility determination based on the testimony of the parties. In that regard, the trial court deferred to the credibility determination of the master, who concluded that most of the marital debt was due to financial

mismanagement and expenses incurred in pursuit of Husband's leisure desires.

The record supports that finding. After disregarding the notion that Husband purchased a motorcycle on a credit card, there is still ample evidence that Husband was solely responsible for the couple's finances and that he did so irresponsibly. As the trial court aptly noted, Husband entered the marriage with $67,000 worth of unsecured debt, and that pattern of debt accumulation continued after the marriage. N.T., 7/17/13, at 193. Husband took a $40,000 advance against a credit card for a failed investment. *Id*. at 197. Husband admitted that he would transfer debt between credit cards to take advantage of low and zero percent interest promotions and increase the credit line. Wife acknowledged that she used the credit cards for household supplies but maintained that she never purchased anything extravagant. Although Husband claimed that Wife spent significantly at places like Wal Mart, he provided no documentation of her expenditures.

Since Wife acknowledged that a credit card was used for marital expenses, the Master attributed $10,000 of the debt to Wife. The trial court deferred to the master's credibility determinations since he observed the parties' demeanor and found support in the record for the master's recommendation relating to marital debt. We find no basis to disturb the trial court's findings. ***See Taper v. Taper***, 939 A.2d 969, 973-974

(Pa.Super. 2007) ("[T]he master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.").

Finally, Husband alleges error in the trial court's order compelling him to pay $1200 of the $1925 in outstanding attorney's fees incurred by Wife. The following principles apply to our review of such awards: We will reverse a determination of counsel fees and costs only for an abuse of discretion, and in making that determination, "we do not usurp the court's duty as fact finder." *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa.Super. 2004). The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be "on par" with one another.

An award of counsel fees is based on the facts of each case after a review of the relevant factors. "These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Busse v. Busse*, 921 A.2d 1248, 1258 (Pa.Super. 2007) (quoting *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa.Super. 2004)). There must be a showing of need. *Id*.

The master's award of attorney's fees was based on Wife's demonstrated need and the disparity in the parties' income. Wife testified that she had been unable to pay counsel fees since August 2012. She was unemployed due to her disability and had no income. She relied upon food stamps and medical assistance. Wife's landlord confirmed that Wife was seven months in arrears on her $525 per month rent. Husband, in contrast, was earning $52,000 per year.

The trial court determined that the award was reasonable. We have no basis to disturb that finding given the circumstances. The marriage lasted less than three years and there were virtually no marital assets. Wife's disability has prevented her from pursuing gainful employment, resulting in a total lack of income. In contrast, Husband has assets, a reasonable income and a substantially higher earning capacity. Finally, Husband admittedly controlled the couple's finances during the marriage. He managed to accumulate significant debt by transferring credit card balances and qualifying for higher credits, a practice he engaged in prior to the marriage and which resulted significant debt. Given these facts, we conclude that the trial court achieved the objective of "economic justice between the parties." **Balicki v. Balicki**, 4 A.3d 654, 663 (Pa.Super. 2010).

Order affirmed.

Judgment Entered.

- 12 -

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/21/2015</u>