J-A29032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA TINNEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH J. TINNEY JR. | : | No. 1489 EDA 2018 |

Appeal from the Order Entered June 19, 2018
In the Court of Common Pleas of Bucks County Family Division at No(s):
A06-02-61765-Y

BEFORE:   OTT, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED DECEMBER 28, 2018**

Appellant Patricia Tinney appeals from the Order Entered in the Bucks

County Court of Common Pleas Family Court Division on June 19, 2018,[1]

---

[1] In their appellate briefs, the parties purport to appeal from the Support Order dated April 24, 2018; however, upon Docketing Statement review, this Court confirmed with the Bucks County Prothonotary's Office that no order had been entered on the trial court docket on that date.  Instead, the trial court had entered the domestic court sheet on the docket, in contravention of the Pennsylvania Rules of Appellate Procedure and corresponding caselaw.  In light of this breakdown in the trial court, this Court entered a rule to show cause Order on June 12, 2018, directing the trial court to enter an order in this matter on or before June 18, 2018.  ***See R.L.P. v. R.F.M.***, 110 A.3d 201 (Pa.Super. 2015) (stating the trial court must enter a written order of court on the trial court docket) ***see also*** Pa.R.A.P. 301(a)(1) (providing "… no order of a court shall be appealable until it has been entered upon the appropriate docket in the lower court.").  In response to this Court's June 12, 2018, Order, the trial court filed its "Supplemental Order" on June 19, 2018, wherein it indicated that it did not receive this Court's Order until that day and denied Appellant's petition to enforce the alimony order.  In light of the trial court's error in not entering its Order timely, we will treat the appeal filed on May 16, 2018, before the Order's entry, as timely filed.  ***See*** Pa.R.A.P.  905(a)(5)("[a]

---

\*   Former Justice specially assigned to the Superior Court.

denying her Petition to Enforce Alimony Order.[2]  Following a careful review,

we affirm.

The trial court set forth the factual and procedural background herein

as follows:

> On May 28, 2002, [Appellant] filed a Divorce Complaint
> against [Joseph J. Tinney, Jr., Appellee] which included a request
> for alimony. On August 31, 2005, a Divorce Decree was entered.
> Part of the Divorce Decree awarded alimony initially set at $2400
> per month. By Order entered February 15, 2012[,] the Honorable
> Wallace H. Bateman, Jr., issued an Order modifying the alimony
> award. In his Order he stated the following:

>> AND NOW, this 15th day of February, 2012, upon
>> consideration of the report of the Master in Family Court,
>> Memoranda of Law, and having heard oral argument on
>> the matter on December 15, 2011, it is hereby ORDERED
>> that the alimony order increase to $4,674 per month. It
>> is further ORDERED that Husband shall continue to pay,
>> as part of his alimony award, 11% of his gross bonus
>> annually. In addition, the request to include Husband's
>> unexercised stock options is hereby DENIED. This Order
>> of alimony is effective June 24, 2011.

> The subject matter of this appeal revolves around another
> Petition filed by [Appellant].
> The current issue[s] appealed to the Superior Court ha[ve]
> been informally argued for a number of years by the parties who
> have requested hearings repeatedly and who have continued the

_____

notice of appeal filed after the announcement of a determination but before
the entry of an appealable order shall be treated as filed after such entry and
on the day thereof.").

[2] While in her appellate brief Appellant states that the trial court improperly
identified this petition as a Petition for Contempt, **See** Appellant's Brief at 11,
Appellant herself characterized the petition as a contempt petition on the
record, **See** N.T. Hearing, 4/24/18, at 11, and in both her Statement Pursuant
to Pa.R.A.P. 1925(b) and the Statement of Questions Involved portion of her
appellate brief.  We will discuss the relevance of this designation in more
detail, *infra*.

hearings repeatedly. When Judge Bateman issued his Order of February 2012 he regularly sat in Family Court. Currently, he is the Administrative Judge of Criminal Court, and never sits in Family Court and this matter was reassigned to the undersigned. The parties met with the undersigned and it was agreed that the dispute arose over the interpretation of Judge Bateman's Order and therefore the undersigned personally requested Judge Bateman to accept reassignment of this case for purposes of a hearing, notwithstanding the fact that he was no longer handling Family Court matters. He graciously agreed to do so and scheduled a hearing which was continued by the parties, much to the frustration of Judge Bateman, and as a result he referred the matter back to the scheduling office of Family Court matters, and as a result the matter came back before the undersigned.

Upon review of the pleadings the undersigned conferenced the case again, at which time the parties discussed various legal principles which were applicable and it was agreed that the parties would present memorand[a] of law and do their best to stipulate to the record. The parties and the [c]ourt concluded during the conference that the matter might resolve as a matter of law based on stipulated facts. Thereafter, it was agreed that the parties would present their legal argument on April 24, 2018, before the undersigned. A hearing was held, at which time the parties confirmed their stipulations of fact and it was acknowledged that their memorand[a] of law were effectively judicial admissions as to facts relevant to the Court's ultimate determination. The parties and their attorneys stated on the record that the facts set forth in the memorand[a] of law presented to the [c]ourt were correct and the [c]ourt could rely on same (N.T. 4/24/2018 pg. 3). [Appellant] argued that she should be entitled to a portion of her ex-husband's stock options. She was not awarded stock options as part of an equitable distribution award, in fact, the stock options were acquired post -separation. (N.T. 4/24/2018 pg. 4). Both of the parties cited a portion of a transcript from a hearing that was held before Judge Bateman on the Appellant's previous petition to modify the alimony award. At the previous hearing before Judge Bateman counsel apparently argued that the alimony award should be set by a formula. There was argument made to Judge Bateman that the Bucks County Courts generally calculate alimony by 40% of the difference in the net monthly income. (N.T. 4/24/2018 pgs. 6-7).

There is no record of Judge Bateman issuing Findings of Fact. Judge Bateman's Order was not appealed and it was a Final Order when the parties appeared before the undersigned.

- 3 -

Trial Court Opinion, 7/18/18, at 1-3.

Appellant filed a notice of appeal on May 16, 2018, along with her "Statement Pursuant to Pa.R.A.P. 1925(b)." Appellant's filing of the concise statement predated the trial court's Order directing her to do so which was not filed until May 21, 2018.

In her appellate brief, Appellant presents the following Statement of the Questions Involved:

1. Whether the [c]ourt made an error of law in failing to consider the issue raised in the Petition for Contempt regarding the inclusion of the exercised stock options in the payment of the eleven (11%) percent bonus to Appellant in the Alimony award of February 15, 2012.

2. The [c]ourt failed to apply the principle of the "Rule of the Case" as defined by Commonwealth v. Starr, 664 A.2d 1326 (Pa. 1995) and the related coordinated justice rule in its interpretation of the Order of February 15, 2012.

3. The [c]ourt made an error of law in interpreting the Order of February 15, 2012[,] as excluding from the alimony award all stock options, whether exercised or not by Appellee.

Brief for Appellant at 5.

Initially, we note that Appellant's brief fails to conform to Pennsylvania Rule of Appellate Procedure 2119(a), which requires that the argument portion of an appellate brief is to be divided into as many parts as there are questions to be argued. While Appellant's first issue presented concerns whether the trial court erred in failing to consider a claim regarding exercised stock options in the "Petition for Contempt," her argument on this point is comprised of just

two paragraphs wherein she asserts the matter, in fact, is not a petition for contempt but rather a "Petition to Enforce Alimony Award" seeking payment of eleven percent of Appellee's exercised stock options because they constitute a  bonus under the terms of the February 15, 2012, Order.  Brief for Appellant at 11-12.  As Appellant has incorporated this argument in her remaining two claims, we proceed to consider them, and in doing so we are guided by our well-settled standard of review regarding questions pertaining to an alimony award:

> is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Teodorski v. Teodorski*, 857 A.2d 194, 200 (Pa.Super. 2004) (internal citations, quotations, and brackets omitted; emphasis in original).

As stated previously, Appellant has characterized the instant petition as both a petition to enforce alimony award and as a petition for contempt.  With regard to the latter designation, we are guided by the following:

> In proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate that the defendant is in noncompliance with a court order." *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.Super. 2012). "To sustain a finding of civil contempt, the

complainant must prove, by a preponderance of the evidence, that: (1) the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) the act constituting the contemnor's violation was volitional; and (3) the contemnor acted with wrongful intent." ***Id.*** Nevertheless, "a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." ***Habjan*** [***v. Habjan***, 73 A.3d 630, 637 (Pa.Super. 2013)].

***Thomas v. Thomas***, 194 A.3d 220, 226 (Pa.Super. 2018), *reargument dismissed* (Sept. 10, 2018).

Appellant's second question presented alleges the trial court erred as a matter of law in failing to apply the "rule of the case" and the related coordinated justice rule when interpreting the February 15, 2012 Order. The original Alimony Order was included as a provision of the Divorce Decree entered on August 31, 2005. Titled "Alimony" that paragraph reads as follows:

> 4. [Appellee] shall pay to [Appellant] through the Domestic Relations Sections alimony in the amount of $2,400 per month. The duration of the alimony award is indefinite. The alimony shall be terminable earlier on the death of either party or the remarriage of cohabitation of wife. The alimony shall be modifiable in the amount upon proof of a substantial and continuing change of circumstance. The alimony pendente lite order shall terminate when the alimony order goes into effect and any arrears on the account shall be paid forthwith.

***See*** Divorce Decree, 8/31/05, at ¶ 4. In the years following the entry of the Divorce Decree, the amount of the alimony due to Appellant was modified to reflect Appellee's increased income. Following a hearing held on December 15, 2011, the trial court entered the aforesaid February 15, 2012, Order which provided, *inter alia*, that ". . . Husband shall continue to pay, as part of his

alimony award, 11% of his gross bonus annually. In addition, the request to include [Appellee's] unexercised stock options is hereby DENIED. . . ."

In her Petition to Enforce Alimony Order/Petition for Contempt filed on September 21, 2015, Appellant alleged, in relevant part, the following:

5. The Alimony Order was most recently modified on February 15, 2012, and included an award of eleven (11%) percent of [Appellee's] annual bonus [a]s alimony from [Appellee] to [Appellant]. . . .

6. Until last year, [Appellee] was employed with Aramark of Philadelphia, Pennsylvania.

7. As part of [Appellee's] employment with Aramark, [he] received stock options periodically as part of his bonus remuneration. The stock options were not liquid until [Appellee] elected to exercise the stock options or terminated his employment with Aramark.

8. As part of the Modification Procedure in 2012, [t]he [c]ourt then denied [Appellant's] request to include [Appellee's] "unexercised" stock options through his employer in the Alimony award.

9. In 2014, [Appellee] left his employment with Aramark and as a result, liquidated his stock options earned as part of his employment with Aramark.

10. The total gross amount of the liquidated stock options as reflected on [Appellee's] Federal Income Tax Return for year 2014 is four million, four hundred and fifty two thousand eight hundred and fifty ($4,452,850.00) dollars.

11. As the stock options were received as a bonus from Aramark to Respondent, under the Alimony Order of February 15, 2012, [Appellant] is entitled to eleven (11%) percent of such now liquidated stock options.

Petition to Enforce Alimony Order, 9/21/15, at ¶¶ 6-11.

Appellant admits that "Appellee has paid the eleven (11%) of the annual gross bonus to Appellant since the Order of February 15, 2012." Appellant's Brief at 7; 31-32. Notwithstanding, the crux of Appellant's argument centers around the interpretation of the term "unexercised stock options" in the February 15, 2012, Order.  Appellant posits that Appellee's exercise of stock options after the trial court's entry of its February 15, 2012, Order resulted in an annual bonus which is subject to the eleven percent award referenced therein. Brief of Appellant at 11-12.  In support of this position, Appellant relies upon the following, on-the-record discussions between the trial court and the parties' counsel at the December 15, 2011, hearing concerning unexercised stock options:

> THE COURT: Can I just interject something? My understanding is -- maybe I can save a little time. You have stock options. And then when you exercise them, you'll exercise the option and presumably sell the stock, and you'll have some gain, I would expect.
>
> APPELLEE: That would be –
>
> THE COURT: Otherwise, you wouldn't exercise it.
>
> APPELLEE: Correct.
>
> THE COURT: That gain would go on your tax return as income.
>
> APPELLEE: Correct.
>
> THE COURT: And that tax return would be turned over to [Appellant], I assume, if requested in any further modification. That would constitute income at the time he exercised it, wouldn't it? That's my question.
>
> [COUNSEL FOR APPELLANT]: Agreed.

THE COURT: All right. So if he gets them, they're only good when he exercises them. And I can save you time by requiring, going forward - I don't think [Counsel for Appellee] would object to it - that you be notified if and when he exercises the option. And you can do with that information what you wish.

[COUNSEL FOR APPELLANT]: What I was asking the Court - and you can shut down this line of questioning right now –-

THE COURT: No. No.

[COUNSEL FOR APPELLANT]: -- if you already resolved this issue.

THE COURT: I thought what you were getting at is you wanted to know what he gets in options, when he exercises them, how much he makes. And that's a fair area of inquiry.

[COUNSEL FOR APPELLANT]: I'm trying to skip a step.

THE COURT: Okay.

[COUNSEL FOR APPELLANT]: That is to say, I'm trying to say, if you get a stock option --if you were granted options in 2011, 2012, some period of time while you're paying her alimony, whenever you exercise those options –-

THE COURT: Right.

[COUNSEL FOR APPELLANT]: -- I want it to be treated just the same way we're going to treat his bonus.

[COUNSEL FOR APPELLEE]: Well –-

[COUNSEL FOR APPELLANT]: Which is, you give us a percentage of the net after-tax proceeds from that exercise when it happens. I don't want to have to find out if he got it, demand it in discovery, get a -- file a petition to modify, and cross that same bridge –- I want to treat it just the same way we treat bonuses.

THE COURT: You may be entitled to an increase in alimony based upon that. Whether you get it as a percentage or whether it has to be calculated as his annual income at the time it's exercised is, I suppose, an issue I'll have to resolve. Because while you're

- 9 -

saying you want to treat it that way, [Counsel for Appellee] is shaking her head no.

[COUNSEL FOR APPELLANT]: I'm trying to avoid the extra step of having to file a petition to modify.

THE COURT: I understand.

[COUNSEL FOR APPELLANT]: That's all. I want to treat it like a bonus.

THE COURT: And I appreciate you being polite, because the court reporter can't take down both of you. So, that's the issue I suppose, that I'll have to decide on the stock options. But I don't know if that helps you or not.

***

[COUNSEL FOR APPELLEE] : And they don't come in every year based on what happened to [Appellee]. We come in based on what [Appellant's] needs are.

[COUNSEL FOR APPELLANT]: There's a different problem here. And this is why I asked that you do it the way I'm suggesting.

He gets stock options tomorrow, for example. He doesn't exercise them until 2015. My client remarries in 2013. If I follow your logic, which is file a petition to modify in 2015, nobody's modifying my alimony because my alimony order doesn't' exist anymore.

THE COURT: Let me just make the argument to the contrary. Suppose the stock options aren't worth -- the stock isn't worth anything in 2013 or 2014. She remarries. And then all of a sudden his company has a great year, and he exercises them. So that income isn't the benefit of anything other than him holding onto them and exercising them at the right time.

[COUNSEL FOR APPELLANT]: The stock options are issued because of him being a valued employee right now or at the time they're being issued.

THE COURT: Okay.

[COUNSEL FOR APPELLANT]: The fact that the company may take off in 2004 are factors beyond the control of everybody in this

room and had nothing to do with his efforts. Or may have minuscule to do with his efforts.

THE COURT: We're all speculating.

[COUNSEL FOR APPELLEE]: Right.

*** 

THE COURT: All right. I'm not sure how much more you have for [Appellee], but I think I understand the stock option issue. I'm not cutting you off. I'm just telling you I think I understand it. I'm not sure what more we can develop, but I'm happy to hear from you.

*** 

Brief for Appellant at 15-18 (citing N.T. Hearing, 12/15/11, at 66-69; 70-71).

Appellant reasons the aforesaid discussions reveal that

if the [c]ourt was intending to remove the stock option issue completely from the alimony calculation, it would have denied any claim to stock option. Not just the 'unexercised stock options'.. . . . So, pursuant to the consolidated jurisdiction rule, it is clear that the [c]ourt made a determination as to the nature of the unexercised stock options not being part of the eleven (11%) percent bonus. **However, that does not mean that the [c]ourt made a determination as to the exercised stock options**.

Brief for Appellant at 19-20 (emphasis added).

Despite Appellant's admission that the trial court did not make a determination as to the exercised stock options in its February 15, 2012 Order, Appellant concludes by stating that the trial court's failure presently to recognize that the term bonus included "the now exercised stock options in the alimony award is a clear abuse of discretion in that it ignores the proceeds

- 11 -

of the exercised stock options as income to Appellee despite the definition of the Pennsylvania Divorce Code at 23 Pa.C.S.A. Section 4301." *Id*. at 32.

At the hearing held on April 24, 2018, pertaining to Appellant's Petition to Enforce Alimony Order/Petition for Contempt, Appellant clarified that the petition, in fact, "is not a petition to modify. This is a petition for contempt for failure to pay 11% on the bonus." N.T. Hearing, 4/24/18, at 11. Appellant argued that the stock options Appellee received in 2014 are part of his "bonus" "[b]y the very definition of the word." *Id*. at 12. When the trial court asked Appellant to point to something in the record to support her position, Appellant responded that "[t]here is nothing in the record right now previously discussing the exercise of the stock option, except what became [sic] before Judge Bateman in December of 2011 as it was raised by [Appellant's prior counsel] ." *Id*.

Notwithstanding, Appellant argued the trial court was bound by "the law of the case" resulting in her being entitled to receive eleven percent of the "bonus" (*i.e*. the stock options). *Id*. at 13-14. Appellant further posited that the trial court's "decision [was] whether the stock options are part of [Appellee's] annual gross bonus. That is the issue." *Id*. at 19. In response, the trial court held:

> THE COURT: I'm saying as far as alimony is concerned, alimony was granted. Alimony in this order of Judge Bateman is the one that you're appealing, and your suggestion that the alimony should be increased based on Judge Bateman's order, I don't see anything in Judge Bateman's order that orders that.

&#42;&#42;&#42;

I don't find that Judge Bateman's order of February 15, 2012, orders that 11 percent of the stock option is part of the alimony. I don't see that this order rules that way and orders that.

&#42;&#42;&#42;

I understand what you're saying. That is your argument. But I'm being very precise. If you're asking me to apply Judge Bateman's order of February 15, 2012. I do not find that Judge Bateman's order of February 15, 2012[,] ordered [Appellee] to, upon the execution of that stock option, give 11 percent of it to his wife. This order does not do that, I don't believe.

&#42;&#42;&#42;

My position of the [c]ourt -- my position is that I'm applying the law of alimony. The alimony order that has been presented to me is Judge Bateman's order of February 15, 2012. It is my position that Judge Bateman's order of February 15, 2012, does not require husband to pay to wife 11 percent of the stock option that he had that he owned or possessed prior to the marriage. I don't conclude that Judge Bateman's order requires him to do that.

I think if it did he should have said that more specifically, but he does not. That is my ruling.

*Id*. at 19-20.

Following our review of the record, we find the trial court did not abuse its discretion in holding Appellee's exercised stock options did not constitute a bonus payable to Appellant in the amount of eleven percent pursuant to the February 15, 2012, Order. Indeed, nowhere in her brief does Appellant cite to an instance of the trial court's abuse of discretion. To the contrary, Appellant admits the court did not make a determination concerning exercised stock options in its February 15, 2012, Order and reiterates points clearly considered and rejected previously by the trial court with regard to the

treatment of Appellee's bonus payments and unexercised stock options. As the trial court stated:

> Judge Bateman's Order does in fact include a formula for regulating a portion of the alimony as it relates to bonus payments [Appellee] received from time to time. However, that same Order also considered Appellant's previous request to the [c]ourt to receive alimony income connected to [Appellee's] unexercised stock options. That request was specifically denied by Judge Bateman. There is no existing alimony Order directing [Appellee] to supplement alimony with income from stock options. An order that forms the basis for a contempt process in civil proceedings must be definitely and strictly construed. ["]Any ambiguity or omission in the order forming the basis for the civil contempt proceeding must be construed in favor of the defendant. Where the order is contradictory or the specific terms of the order have not been violated, there is not contempt." *Wood v. Geisenhemer-Shaulis*, 827 A.2d 1204, 1207-08 (Pa.Super. 2003). To be punished for contempt, a party must not only have violated a clear order, but that order must have been definite, clear and specific-leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct. Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. *Sutch v. Roxborough Mem'l Hosp.*, 142 A.3d 38, []67 (Pa.Super. 2016).

Trial Court Opinion, 7/18/18, at 6.

Simply put, Appellee's being required to exercise his previously unexercised stock options when he left employment with Aramark simply cannot be read as synonymous with a receipt of a bonus payment under the plain language of the February 15, 2012, Order. The Order provides that eleven percent of Appellee's gross bonus was to be paid to Appellant annually and specifically denies Appellant's request to include Husband's unexercised stock options in the alimony award. As such, the unexercised stock options

- 14 -

were not annual payments, for as the parties and trial court agreed, the time and amount of their payment was speculative; at the time the Order was entered, all of Appellee's stock options were "unexercised." Importantly, no appeal was taken from the February 15, 2012, Order.

In light of the foregoing, contrary to Appellant's reasoning, the "rule of the case" as it is defined by the Pennsylvania Supreme Court in ***Commonwealth v. Starr***, 541 Pa. 564, 664 A.2d 1326 (1995) does not mandate a favorable result for Appellant. Rather, the opposite is true. In ***Starr***, the Supreme Court explained it:

> has long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions. ***See, e.g., Okkerse v. Howe***, 521 Pa. 509, 516–517, 556 A.2d 827, 831 (1989). This rule, known as the "coordinate jurisdiction rule," is a rule of sound jurisprudence based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. ***Id. See also Golden v. Dion & Rosenau***, 410 Pa.Super. 506, 510, 600 A.2d 568, 570 (1991) (once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted).
> In our view, this coordinate jurisdiction rule falls squarely within the ambit of a generalized expression of the "law of the case" doctrine. This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. ***See*** 21 C.J.S. Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court

may not alter the resolution of a legal question previously decided by the transferor trial court. *See* Joan Steinman, *Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation,* 135 U.Pa.L.Rev. 595, 602 (1987) (*citing* A. Vestal, *Law of the Case: Single–Suit Preclusion,* 12 Utah L.Rev. 1, 1–4 (1967)) (*hereinafter* "*Judicial Puzzle* ").

The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end. 21 C.J.S. Courts § 149a; *Judicial Puzzle* at 604–605.

***Id***., at, 573–74, 664 A.2d at 1331.

Appellant framed the issue before the trial court at the April 18, 2018, hearing as whether the stock options are a bonus and, therefore, payable to Appellant in the amount of eleven percent under the terms of the February 15, 2012, Order. In that Order, the trial court squarely addressed this issue in ordering Appellee to continue to pay, as part of his Alimony Award, eleven percent of his gross bonus annually and in denying Appellant's request to include Appellee's unexercised stock options as income which also may be awarded. The trial court clearly made a distinction between annual bonuses and unexercised stock options, specifically excluded the latter, and included no additional income sources in the Order.

Moreover, Appellant's arguments on this point pertaining to the definition of income as it is defined in Divorce Code are misplaced, for the instant matter concerns whether Appellee is in contempt of and obligated to remit payment under, the February 15, 2012, Order, not the definition of

income.  In filing the instant petition, Appellant attempted to relitigate before the trial court an issue a previous trial court considered and rejected, and in doing so asked that court to ignore the "rule of the case" which she herself urges before this Court must be applied.  Thus, this claim lacks merit.

Finally, Appellant asserts the trial court erred as a matter of law when it interpreted the February 15, 2012, Order to exclude from the alimony award all stock options, whether exercised or not by Appellee.  Appellant begins her argument on this point with a dictionary definition of the term "bonus," and repeats earlier arguments pertaining to the "coordinated justice rule" and the "law of the case rule."  Brief for Appellant at 28-30.

First, the dictionary definition of the term bonus is inapposite, for the plain meaning of the February 15, 2012, Order designates annual bonuses and unexercised stock options as separate entities, the latter of which is clearly excluded from the alimony calculation.  The trial court's separate designation of bonus payments as payments to be made annually from unexercised stock options, which are not to be included in the alimony calculation, and its total failure to reference exercised stock options, evinces an intent to prevent the inclusion of all stock from the alimony calculation.  As the trial court found:

> The parties' reference to statements made in [c]ourt prior to the Court Order ignores legal principles which control the process of interpreting a document.
> When it comes to interpreting court orders, the case law dictates that the plain meaning of the language will control unless there is a patent ambiguity on the face of the order.  ***See Pare v. Wyeth, Inc.***, 870 A.2d 378, 381 (Pa.Super. 2005).

> In the case before the [c]ourt, Judge Bateman's Order was clear on its face. It granted [Appellant] 11% of [Appellee's] annual gross bonus and specifically stated that the request to include as part of the alimony award [Appellee's] unexercised stock options was DENIED.

Trial Court Opinion, 7/18/18, at 8.

In light of all of the foregoing, we find Appellant's allegations are without merit and affirm the trial court's June 19, 2018, Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/18