Catherine Ann LAWSON, Appellee

v.

John E. LAWSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 18, 2007.

Filed Dec. 31, 2007.

Neil J. Marcus, Monongahela, for appellant.

Steven R. Wolf, Canonsburg, for appellee.

BEFORE: ORIE MELVIN, BOWES, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 Appellant, John E. Lawson (hereinafter "Husband"), appeals from the trial court order requiring him to pay alimony to Appellee, Catherine Ann Lawson (hereinafter "Wife"), and to maintain medical insurance for gap coverage on her behalf. Upon review, we affirm.

¶ 2 The factual and procedural history underlying this appeal is as follows. The parties were married on October 17, 1998, when Husband and Wife were approximately 55 and 39 years of age, respectively. Wife has a high school education and some training in cosmetology, and at one time managed two hair salons. Husband is a certified public accountant and president of a corporation that he founded in 2002 for the provision of financial, accounting, and tax preparation services. The parties separated in October 2002, after four years of marriage, and Wife filed a complaint in divorce in January 2003. Approximately one year later, in January 2004, Wife suffered a stroke that rendered her totally disabled, wheelchair-bound, speech-impaired, and unable to take care of her own basic daily needs.

¶ 3 In January 2005, a bifurcated divorce decree was entered. The master who was hearing the case filed a report on September 19, 2005, recommending that Husband pay to Wife $500 per month in alimony for an indefinite period of time, and also that Husband continue to provide medical insurance coverage for Wife until she were

to become eligible for Medicare or Medicaid.[1] Husband filed exceptions to these recommendations, arguing that because of the short duration of the marriage and his assumption of $60,000 in marital debt, he should be responsible neither for Wife's medical coverage nor for alimony payments. Before the trial court reached a decision regarding Husband's exceptions, Husband filed a motion to suspend his obligation to provide Wife with medical insurance, based on his assertions that Wife had been admitted to Kane Regional Center, a skilled nursing facility, which provided Wife with medical insurance coverage. The trial court remanded the case to the master for supplementation of the evidentiary record.

¶ 4 The master filed a supplemental report on August 21, 2006, which reversed the recommendations of his initial report. The master found that Wife's health had deteriorated substantially since the issuance of his initial report, necessitating her admission to a skilled nursing facility. In addition, the master found that, as of July 1, 2006, Wife had become eligible for Medicare, which covered both her hospital and medical expenses. The master cited as credible the testimony of the business office manager at Kane Regional, who testified that Wife's care would remain unchanged in the event that Husband's alimony and medical insurance payments were terminated. According to this witness, if Husband's alimony and insurance payments were terminated, Kane Regional would simply request payment from the Department of Public Welfare (hereinafter "DPW"), which would assume the cost of Wife's care. Based on the changes in

Wife's circumstances, which had led to a situation where her reasonable needs could be met by DPW and Medicare, the master recommended that Husband's obligations to provide Wife with medical insurance and to pay alimony should be terminated.

¶ 5 Wife filed exceptions to the master's supplemental report and recommendations, arguing that they (1) failed to take into account the expense to the Commonwealth and ultimately the taxpayers of assuming Husband's support obligation; (2) disregarded the possibility that Wife would not be able to remain at Kane Regional indefinitely; and (3) did not address coverage for off-site medical treatment that Wife receives. The trial court heard oral argument on October 6, 2006, and on March 5, 2007, the trial court rejected the master's second report and ordered Husband to pay alimony of $550 per month and to provide gap medical insurance coverage to Wife.

¶ 6 Husband filed a timely appeal.[2] The trial court ordered Husband to file a statement of matters complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Husband complied in timely manner, and now raises the following four issues for our review.

I. Should [ ] Husband have been required to pay any indefinite order of alimony following the master's first recommendation, given the fact that the marriage was of relative short duration, four (4) years, and [ ] Wife made no extraordinary contributions to [ ] Husband's earning potential or contributions as a homemaker?

1. The master also concluded that there were no marital assets to divide, only marital debt; that both parties had declared bankruptcy; and that Wife had little, if any, property. The master recommended that all other claims of the parties be dismissed.

2. We note that the court's order also denied Husband's exceptions. The order has thus disposed of all claims of all parties and is therefore a final order, from which an appeal may be taken. *See* Pa.R.A.P. 341(a) and (b)(1).

II. Was it unreasonable for the court to reject the recommendations of the master following the second hearing and order Husband to continue to make alimony pendente lite payments for an indefinite duration, despite the undisputed fact that Wife's standard of living, medical benefits, and continue [sic] to live at Kane Regional Center, would not be affected if the court suspended and/or terminated Husband's alimony pendente lite benefits?

III. Did the court error [sic] when it reimposed on [Husband] an obligation to provide medical coverage for [Wife] when the master's recommendation of September 16, 2005[,] stated medical coverage would lapse after Wife became Medicare[-]eligible and no timely exceptions were filed by [Wife] pursuant to Pa[.]R.C.P. 1920.55–2?

IV. Should [ ] Husband be obligated to pay Wife's ongoing medical care when there was [sic] no timely exceptions filed by the defense to the master's first recommendation, namely that Husband's obligation to provide health insurance would terminate when Wife began to receive Medicare?

(Husband's Brief at 3).[3]

¶ 7 In spousal support cases, our standard of review requires that we

determine whether the trial court has, in deciding the case, abused its discretion; that is, [not whether the trial court has merely committed] an error of judgment, but [rather whether the trial court] has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill-will as demonstrated by the evidence of record.

*Dudas v. Pietrzykowski,* 578 Pa. 20, 25, 849 A.2d 582, 585 (2004) (citation omitted).

¶ 8 As delineated by statute, it is the policy of this Commonwealth to "grant or withhold alimony according to the actual need and ability to pay of the parties." 23 Pa.C.S.A. § 3102(a)(6); *see Stamerro v. Stamerro,* 889 A.2d 1251, 1259 (Pa.Super.2005). The purpose of alimony is not to reward one party or punish the other, but rather, as held by our Supreme Court, "to provide the receiving spouse with sufficient income to obtain the necessities of life." *Wagoner v. Wagoner,* 538 Pa. 265, 270, 648 A.2d 299, 301 (1994) (quoted in *Stamerro, supra* at 1259); *see also Isralsky v. Isralsky,* 824 A.2d 1178, 1188 (Pa.Super.2003) (reiterating that the purpose of alimony is "to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment[ ] are met") (citation omitted). Alimony is considered a "*secondary remedy[,]* available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorski v. Teodorski,* 857 A.2d 194, 200 (Pa.Super.2004) (emphasis in original).

¶ 9 To determine whether alimony is necessary and to establish the appropriate nature, amount, and duration of any alimony payments, the court is required to consider **all** relevant factors, including the 17 factors that are expressly mandated by statute. *See* 23 Pa.C.S.A. § 3701(b); *Teodorski, supra* at 200; *Isralsky, supra* at 1188. The statutorily-mandated factors include, in relevant part, the following: the relative earnings and earning capacities of the parties; the physical, mental and emotional conditions of the parties; duration of the marriage; the contribution by one party to the education, training or increased

---

**3.** We have reordered Husband's issues for ease of disposition.

earning power of the other party; the relative assets and liabilities of the parties; any property brought to the marriage by either party; contribution by one party as homemaker; the relative needs of the parties; whether the party seeking alimony is incapable of self-support. 23 Pa.C.S.A. § 3701(b); *see Teodorski, supra* at 200 (listing many of the subsection 3701(b) factors as mandatory considerations).

■ ¶ 10 We turn now to Husband's first issue, in which he contends that the trial court erred in awarding Wife alimony, despite the short duration of the parties' marriage and Wife's failure to make extraordinary contributions to Husband's earning potential or as a homemaker. (*See* Husband's Brief at 9). Husband cites *Teodorski* as support for his claim that in a marriage of short duration, alimony is not properly imposed. After careful review of *Teodorski* and the statutory and decisional law discussed above, we conclude that Husband misreads *Teodorski*. The *Teodorski* panel did indeed conclude that the relatively short duration of the marriage[4] in that case was properly considered by the trial court as a significant factor in denying the wife's claim for alimony. *Teodorski, supra* at 201; *see also* 23 Pa.C.S.A. § 3701(b)(5). However, the *Teodorski* panel also mentioned numerous other fac-

tors that likewise militated against an alimony award, including the husband's custody of the parties' two children, the wife's superior education and technical training, and the similarity of the parties' respective standards of living. It was clear in *Teodorski* that the trial court had considered numerous relevant factors, those militating in favor of as well as those militating against an award of alimony, and had reached a decision after weighing all the factors. The *Teodorski* trial court did not base its denial of alimony—and this Court did not base its affirmance—on the single factor of duration of the marriage.

¶ 11 In the instant case, as in *Teodorski*, the trial court recognized its responsibility to consider the multitude of relevant factors. After weighing the relevant factors, the trial court determined that alimony was necessary, primarily because of Wife's severe disability. It was undisputed that Wife is totally disabled and is completely incapable of supporting or even caring for herself due to her illness and that Husband is capable of providing Wife with financial support. We cannot conclude that the trial court abused its discretion by giving determinative weight to these undisputed factors. Accordingly, Husband's first issue does not entitle him to any relief.[5]

---

4. The marriage in *Teodorski* lasted for a little more than six years.

5. In his brief, Husband incorrectly states that the holding of *Teodorski, supra,* relates to alimony *pendente lite.* Contrary to Husband's assertion, *Teodorski* addresses factors which the court must consider prior to an award of **alimony.** *See Teodorski, supra* at 200–01 (discussing factors listed in 23 Pa.C.S.A. § 3701(b) **Alimony**).

As this Court has previously explained, alimony *pendente lite* is distinguishable from alimony:

> Alimony pendente lite means alimony or maintenance "pending litigation" and is payable during the pendency of a divorce

proceeding so as to enable a dependent spouse to proceed or defend against the action. Alimony pendente lite is designed to be temporary and is available to those who demonstrate the need for maintenance and professional services during the pendency of the proceedings.

*Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169, 176 (1995) (citations omitted).

The factors which the court should consider before ruling on a claim for alimony *pendente lite* are the following: "the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties."

¶ 12 In Husband's second issue, he contends that the "so[-]called need for [ ] continued [alimony] payments does not exist because [Wife] is now in Kane Regional Center and the Department of Public Assistance, which is already paying several thousand dollars a month for her continued maintenance and support of the facility, will simply make up the difference." (Husband's Brief at 12). Although it is undisputed that Husband can afford to pay the amount of alimony imposed, he nonetheless argues that the trial court erred in imposing *any* alimony, which effectively "attach[ed] a millstone around his neck, from which he cannot escape." (*Id.* at 13).[6] We note that Husband cites absolutely no authority for his view of alimony as it relates to a payee's eligibility for public assistance.

¶ 13 As we have described in our disposition of issue I, the trial court considered and weighed the relevant statutory factors before granting alimony to Wife. While the trial court contemplated many factors, it is clear that the court found the following to be determinative: Wife's pressing need, her total inability to support or even care for herself, and Husband's earning capacity and ability to provide some financial support for Wife. For the reasons discussed in issue I, we have concluded that the trial court did not abuse its discretion by granting alimony based primarily on these factors, all of which are expressly set forth in the relevant statute. *See* 23 Pa.C.S.A. § 3701(b)(1), (2), (3), (13), and (17).

¶ 14 That Wife is eligible to receive assistance from publicly-funded programs does not give the courts license to ignore Section 3701(b) and thus to decide questions of alimony unencumbered by the collective decisions of our Legislature. Furthermore, that Wife is eligible to receive assistance from publicly-funded programs does not eliminate Husband's obligation toward her. If we were to accept Husband's argument—which we emphatically do not—it could be used, with only slight extension, to support denial of alimony in virtually any case in which a public assistance program could be invoked in alimony's stead. We have no hesitation in concluding that our Legislature most certainly had no such intention in constructing the Divorce Code, and thus we, in the strongest terms possible, reject Husband's argument as to the substitution of public funds for alimony.

¶ 15 In Husband's third and fourth issues, he argues that, by not filing exceptions to the master's September 2005 re-

---

*Litmans v. Litmans*, 449 Pa.Super. 209, 673 A.2d 382, 389 (1996).
Although in the first and last sentence of Husband's brief's argument section for issue I, he purports to challenge the trial court's award of alimony *pendente lite*, Husband makes no argument and cites no authority for such a challenge. (*See* Husband's Brief at 9–10). Therefore, to the extent that Husband's issue I challenges the court's award of alimony *pendente lite*, it is waived. *See Chapman–Rolle v. Rolle*, 893 A.2d 770, 774 (Pa.Super.2006) (quoting *Jones v. Jones*, 878 A.2d 86, 90 (Pa.Super.2005) for the proposition that "[i]t is well settled that a failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal").

6. Husband's counsel argued as follows:

It doesn't matter whether [Husband is] making $1,000 or $10,000 a month. What we're seeking to show is that the monies—whatever he is paying in support is literally money going down the drain.

\* \* \* \*

[W]e are not in [court] saying [that Husband has] had a decrease in his income and now he needs relief. We're saying there should be a change [in support payments] because [Wife is] at Kane [Regional Center] and it literally makes no difference now. (Notes of Testimony, 6/26/06, at 30–31).

port, which recommended that Husband provide Wife with medical insurance until she became eligible for Medicare, Wife waived her right to file exceptions to the master's August 2006 report, which recommended that Husband's obligation to provide such insurance be terminated because Wife had become eligible for Medicare. Husband relies on Pennsylvania Rule of Civil Procedure 1920.55–2(b), which states in relevant part that "[m]atters not covered by exceptions [to the master's report and recommendation] are deemed waived." As our Court has previously explained, "[t]his rule requires a party who is dissatisfied with a master's report to file exceptions to the report, or waive any such objections." *Benson v. Benson*, 357 Pa.Super. 166, 515 A.2d 917, 919 (1986). We do not agree with Husband's contention that the Rule barred Wife from filing exceptions to the master's second recommendation as to her medical insurance.

¶ 16 The master filed two reports/recommendations in the instant case, the second one being a supplement to the first, which was based on new evidence regarding Wife's changed circumstances. Husband filed exceptions to the first report/recommendation, but before the trial court could hear argument on those exceptions, Husband petitioned the court to suspend his obligation to provide Wife with medical insurance, based upon new information not then of record. Therefore, the trial court did not hold oral argument on Husband's exceptions and did not take any action as to the master's first report/recommendation. Instead, the trial court remanded the case to the master for supplementation of the factual record. The master then held another hearing, reconsidered the facts of the case, and filed a second report/recommendation, which incorporated

the first report/recommendation, except to the extent that it was supplemented and modified by the second. The second report/recommendation presented very different recommendations based on Wife's change of circumstances. After Wife filed exceptions, the trial court then finally held a hearing to consider the master's recommendations, Wife's exceptions, and Husband's exceptions.

¶ 17 We cannot conclude that Rule 1920.55–2 barred Wife from filing exceptions to the master's second, amended report/recommendation as to medical insurance. The trial court never issued a ruling on the master's first report/recommendation, and indeed there is no indication from the record that the trial court formally considered the master's first report/recommendation in isolation from the second report/recommendation. Before the trial court had the opportunity to consider the master's first report/recommendation, the master—at Husband's request—engaged in additional fact-finding, supplemented his first report, and offered a second report/recommendation in light of the changed factual situation. Thus, the reason for the second report/recommendation was a changed factual situation, which, in the master's view, required a drastically altered recommendation. We conclude that Rule 19202.55–2 is not designed to prevent a litigant from offering exceptions under these circumstances.[7]

¶ 18 Concluding that none of Husband's issues has any merit, we affirm the order of the trial court.

¶ 19 Order affirmed.

---

7. We note that Husband offers no supporting authority for his expansive interpretation of

the waiver provision of Rule 1920.55–2(b).