J-A23040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RAVINDER S. RANDHAWA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANDEEP KAUR | : | No. 533 MDA 2021 |

Appeal from the Order Entered March 30, 2021
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): S-937-15

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: JANUARY 4, 2022**

Ravinder S. Randhawa ("Husband") appeals from the March 30, 2021

order entering a decree in divorce from Mandeep Kaur ("Wife") and dismissing

the bulk of his exceptions to the equitable distribution scheme set forth in the

master's third report and recommendation. After careful review, we affirm.

The trial court summarized the underlying facts this case, as gleaned

from the certified record, as follows:

> Both parties are originally from the country of India.
> Both had been married previously. [Husband] was
> born December 10, 1976, has a tenth grade
> education, moved to the United States at some
> unspecified time prior his marriage to [Wife], lives
> with his parents in Enola, Pennsylvania, works as a
> gas station clerk and claims to earn $7.25 per hour for
> forty hours a week. [Husband] has no retirement
> benefits through his employment, claims to be on

_____

* Former Justice specially assigned to the Superior Court.

Medicaid, and suffers from several medical conditions including high blood pressure, cholesterol and diabetes.

[Wife] was born September 19, 1983, obtained what was deemed a general degree from a college in India (which she described as education encompassing taking care of the home, stitching, cooking, physiology — "if you get someone sick," and playing a guitar), never worked outside of the home until she performed part-time work handing out food samples to store customers in 2017, suffers from back problems which she attributes to injuries received from physical abuse perpetrated by [Husband], is what she deems "homeless," as she lives in housing provided by WIC (Women In Crisis) in Schuylkill County, [Pennsylvania], and has primary custody of the parties' male child, born July 13, 2007. ([Husband] testified that the date of birth of the child was in 2010, while [Wife] testified at the 2018 hearing that the child was eleven years old. The child support order of October 5, 2017, pursuant to which [Husband] was directed to pay $45.60 in basic support and $20.00 on arrearages per month, identifies the child's birth date as July 13, 2007.) [Husband] had been delinquent in paying support.

According to [Wife], she came to the United States following her parents arranging a marriage with a man she had never met. The marriage was apparently short lived. Because her parents knew [Husband's] parents, it was deemed satisfactory for [Wife] to live with [Husband's] parents. According to [Wife], "India" required that persons be married before having children and, as a result, she and [Husband] married in a mass religious ceremony on December 18, 2005 at a temple in Los Angeles, California known as Sant Nirankari Mission. Per [Wife], the parties' religion does not recognize a court ceremony. However, due to a visa problem [Wife] had, the parties participated later in a government proceeding and obtained a certificate indicating they married on August 20, 2012.

[Husband] and [Wife] originally lived in California with [Husband's] parents and then moved to a home that [Husband] had purchased. Because he failed to maintain the loan payments, after a couple of years the lender apparently foreclosed or otherwise obtained possession of the property and the parties thereafter moved to Pennsylvania. Due to [Husband's] poor credit resulting from the loan default, [Husband] insisted that [Wife's] name be used for financial purposes, both for personal affairs and for his business. (Evidence established the existence of Bank of America business accounts with one titled "Mandeep Kaur — Sole Prop DBA CSR Transportation," which supports this testimony.)

According to [Wife], she had no access to any financial accounts; she was not allowed to pay bills; [Husband] directed that she sign blank checks to accommodate the transacting or business; and, she was not allowed to inquire about business affairs or he would become angry with her and beat her while saying she was a wife and had to trust him. [Wife] was generally aware that [Husband] had traveled to and engaged in purchasing real property and doing banking activities in India but she had little information about those matters. Additionally, [Wife] claimed that [Husband] monitored her activities; she was not allowed to talk with her parents unless while supervised and via speaker phone; she was not allowed to leave the home without his consent, she was not allowed to have any money in her possession; and, he kept jewelry she had received as gifts in his truck.

[Wife] described [Husband] as not only a controlling individual but also violent, as he would occasionally hit her. Immediately prior to the parties' final separation, [Husband] had threatened to kill [Wife] and their child. During that incident a neighbor heard the commotion and called police, after which the police arrested [Husband] and advised [Wife] to seek a protection from abuse order. [Wife] did so and moved from the parties' home with the child into WIC housing. When she left the parties' home [Wife] took

- 3 -

> only her and the child's clothing, some important paperwork, and a vehicle.
>
> [Husband] was an over-the-road truck driver, and owned and operated a trucking business during the marriage. At separation he owned or possessed a tractor, trailers, and van.
>
> [An accident following the parties' separation resulted in the destruction of Husband's trailer and loss of his commercial driver's license.]

Trial court opinion, 3/30/21 at 2-5.

The parties separated on March 18, 2014 and Husband filed a divorce complaint on May 26, 2015, raising claims relating to the equitable distribution of the marital estate. Kent D. Watkins, Esq. ("Master Watkins") was appointed to address the parties' claims and a hearing was ultimately conducted on October 15, 2018. Following the hearing, Master Watkins filed a report and recommendation on March 8, 2019. On March 27, 2019, Husband filed exceptions to Master Watkins' report and recommendation. Thereafter, on May 23, 2019, the trial court entered an order denying Husband's exceptions and remanding this matter with instructions for the parties to clarify and supplement the record with additional evidence.

On July 23, 2019, a second hearing was conducted during which the parties were given the opportunity to present additional evidence on their assets and liabilities. Following the hearing, Master Watkins filed an amended report and recommendation on December 6, 2019, detailing his equitable

distribution plan. Both parties filed exceptions to Master Watkins' amended report and recommendation.

Thereafter, the trial court reviewed the parties' exceptions and the supplemental record and found that several significant issues affecting the proper analysis of the parties' assets and liabilities remained outstanding. On May 1, 2020, the trial court again remanded this matter to Master Watkins for the submission of additional evidence. A hearing was subsequently held on June 20, 2020.

Following the hearing, Master Watkins filed a third report and recommendation on November 12, 2020. Specifically, Master Watkins made the following recommendations in his report:

> [T]hat [Husband] be awarded the following: [Husband's] clothing ($10,000.00), Household goods and furnishings ($5,000.00), ICICI Prudential Life Insurance Policy ($11,217.00), Four mobile phones ($500.00), Four dinner sets ($800.00), Two comforters ($275.00), IPad ($200.00), Share of pension ($3,700.00), and 1/3 Interest in 11-plus acres of land in India – ($200,000.00 – unknown increase in value), together with other foreign-held land assets. Additionally, the Master recommended that Plaintiff be responsible for the unpaid taxes to the IRS, hospital bill to Schuylkill Medical Center, credit card bill with Capital One, credit card loan, and NHS Human Services in Sunbury, Pennsylvania.
>
> [T]hat [Wife] receive the following: 2012 Volkswagen Passat ($15,000.00), M&T Bank checking and saving accounts #298 ($2,231.30), Bank of Baroda checking account #0780 ($13,600.00), ICICI Bank Account #5572 ($2,952.00), ICICI Bank Account #4838 ($7,000.00), [Wife's] interest in [Husband's] pension ($3,000.00), ICIC Bank Account ($6,190.00), TAB

- 5 -

> Bank Account ($1,755.00), Bank of America Account #5790 ($2,006.00), ICICI Bank Account #2966 ($2,700.00), IGIC Bank Account #7600 ($182.00), Household goods and furnishings ($5,000.00), Dishes and cookware ($1,200.00), One laptop computer ($300.00), One IPad ($200.00), One Play Station game console ($200.00), and [Wife's] non-marital jewelry value and its value to be assigned to her ($25,000.00).

Trial court opinion, 3/30/21 at 15-16; *see also* Third Amended Master's Report, 11/12/20, at 10-11.

Husband subsequently filed exceptions to this report on November 30, 2020. On March 30, 2021, the trial court entered an opinion and order dismissing the bulk of Husband's exceptions and adopting the equitable distribution scheme set forth in the third report and recommendation. A decree in divorce was entered that same day.

On April 27, 2021, Husband filed a timely notice of appeal. On April 29, 2021, the trial court directed Husband to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). Husband filed his timely Rule 1925(b) statement on May 14, 2021. On June 3, 2021, the trial court filed a comprehensive, eight-page Rule 1925(a) opinion which adopted its prior opinion authored in support of the March 30, 2021 order.

On appeal, Husband raises a litany of issues for our review:

> 1. Did the Master and the [trial court] err and abuse their discretion by finding that it was incredible that [Wife] would have access to [Husband's] business account, since the

undisputed evidence clearly established that Wife withdrew significant funds from the bank account, as confirmed by her signature on various checks, the evidence established that [W]ife withdrew $7,600.00 from the TAB bank account on February 18, 2014, and $10,000.00 on March 12, 2014, which were clearly marital funds, and by failing to credit the $10,000.00 which [W]ife withdrew from the TAB account to her, and by finding that the $10,000.00 should be considered as having been used for payment of marital debts and expenses during the marriage, since there was absolutely no evidence of record which established that the funds were used for the payment of marital debts and expenses, and the only evidence was that these funds were withdrawn by [W]ife?

2. Did the Master and [the trial court] err and abuse their discretion by finding that the parties were married on December 18, 2005, since the credible, documentary evidence which existed regarding the date of marriage was documentary evidence submitted by [H]usband, which reflected that the parties were married on [A]ugust 21, 2012?

3. Did the Master and [the trial court] err and abuse their discretion by failing to take into consideration that Husband was only holding a minimum wage low paying job, and that he did not even graduate from high school, but that wife holds a bachelor's degree in arts, philosophy, home economics, physiology and music, and that as a result she is more qualified to obtain suitable employment?

4. Did the Master and [the trial court] err and abuse their discretion by not only awarding the bulk of the marital estate to [W]ife, but by also recommending that [H]usband be responsible for 100% of the marital debt, without imposing any responsibility on [W]ife, although they also

- 7 -

recommended that [H]usband receive a minuscule portion of the marital estate?

5. Did [t]he Master and [the trial court] err and abuse their discretion in formulating their equitable distribution scheme since when one considers all of the factors enunciated under the divorce code since, it is clear that it is [H]usband who should have been awarded the bulk of the marital estate, since, amongst other things, he is being forced to pay 100% of the marital debt?

6. Did the Master and the [trial court] err and abuse their discretion by concluding that Husband did not disclose all of the assets required of him by the court order dated [M]ay 15, 2020, and that he did not disclose the value of lands held in India or the increase in value between the date of marriage and the date of separation, since Wife did nothing in order to obtain a valuation of this property, and all assets had been disclosed, and the Master and the [trial court] used the alleged non-disclosure as a reason to award to Wife an unconscionable share of the marital estate and the [trial court] penalized Husband?

7. Did the Master and the [trial court] err and abuse their discretion by ignoring one of the most significant factors enunciated under the divorce code, dealing with who acquired and preserved the marital estate, and by totally ignoring the fact that it was Husband who acquired the marital estate, and they only made reference to the fact that Wife was the homemaker, which establishes clear error?

8. Did the Master and the [trial court] err and abuse their discretion in formulating their recommended equitable distribution award, and misapply the factors enunciated under the divorce code warrant the distribution requested by [H]usband in his exceptions, in the amount of 80% of marital property[?]

9. Did the [trial court] err and abuse it's (sic) discretion by finding that Husband had engaged in marital misconduct [and] was controlling and physically abused [W]ife throughout the marriage, which is not relevant in determining how marital property should be equitably divided?

10. Did the [trial court] err and abuse its discretion by finding that there were two sets of jewelry, and by awarding one set to the Husband and the other set to Wife, where the Master did not even find that there were two sets of jewelry, and the record is totally devoid of any evidence that there were two sets?

11. Did the [trial court] err and abuse its discretion by finding that Husband had numerous Indian Bank Accounts, and by taking these accounts into consideration, when there was no evidence of record dealing with these phantom Indian Bank Accounts[?]

Husband's brief at 6-7 (internal quotation marks omitted).

Preliminarily, we note that the issues presented in Husband's "Statement of Questions Involved" do not align with those raised in the "Argument" section of his appellate brief. Although Husband raises 11 distinct issues above, the "Argument" section contains only 9 intertwined claims delineated by Roman numerals and presented in an entirely different sequence.

The record reflects that Husband has waived Issue 2 (Argument IV) challenging Master Watkins' finding with regard to the date of the parties' marriage by failing to file an exception thereto.

It is well settled that in order to preserve issues for appeal relating to a master's report and recommendation a party must file exceptions. Pa.R.A.P. 302(a); *Lawson v. Lawson*, 940 A.2d 444, 450 (Pa.Super. 2007) (stating, "a party who is dissatisfied with a master's report [must] file exceptions to the report, or waive any such objections." (citation omitted)), *appeal denied*, 951 A.2d 1165 (Pa. 2008). The failure to file a timely exception to a finding in a master's report and recommendation, as is the case here, results in waiver of the claim. *Sebastianelli v. Sebastianelli*, 876 A.2d 431, 432 (Pa.Super. 2005).

We now turn to Husband's challenges to the equitable distribution scheme. Husband avers that the award of the bulk of the martial estate to Wife while Husband is held responsible for 100% of the parties' martial debt was unsupported by the record (**Issues 4 & 5; Argument V**). Husband's brief at 32-34.

Specifically, Husband argues that Master Watkins and the trial court erred in finding that: his contention that Wife withdrew money from his business bank accounts and withheld rent money for her own personal use lacked credibility (**Issue 1; Argument III**); that Wife was entitled to the value of $25,000 worth of jewelry that was gifted to her by various family members during the marriage (**Issue 10; Argument VII**); and that numerous bank accounts in India could be attributed to Husband. (**Issue 11; Argument VIII**). *Id.* at 29-31, 36-39.

- 10 -

Our standard of review of awards of equitable distribution is well settled:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa.Super. 2012) (citation omitted), *appeal denied*, 62 A.3d 380 (Pa. 2012).

The Divorce Code does not specify a particular method of valuing assets. The divorce master and trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. *Smith v. Smith*, 653 A.2d 1259, 1265 (Pa.Super. 1995), *appeal denied*, 663 A.2d 693 (Pa. 1995).

> In determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial

- 11 -

court does not abuse its discretion in adopting the only valuation submitted by the parties. Absent a specific guideline in the divorce code, the trial courts are given discretion to choose the date of valuation of marital property[,] which best provides for "economic justice" between parties.

***Baker v. Baker***, 861 A.2d 298, 302 (Pa.Super. 2004) (citations and internal quotation marks omitted), ***appeal denied***, 918 A.2d 741 (Pa. 2007).

Here, Husband's claims hinge in large part on his disagreement with a number of Master Watkins' findings. Specifically, Master Watkins found that the evidence established that although Husband had utilized Wife's name for a number of his business accounts, he was in exclusive control of the parties' financial affairs and his testimony to the contrary was not credible. Third Amended Master's Report, 11/12/20, at 5. Master Watkins further found that Wife's credibly testified that she had received approximately $25,000 worth of jewelry as gifts from various family members over the course of the marriage, and that the evidence established that the jewelry is her non-martial property. ***Id.*** Additionally, Master Watkins found that the evidence established that Husband had accumulated substantial savings from his trucking business, which he transferred to multiple bank and retirement accounts in India. ***Id.*** at 8-9.

In reaching these findings, the record reflects that Master Watkins relied on the plethora of exhibits submitted by the parties, as well as the testimony of each party at three separate hearings. The trial court found that Master Watkins' findings and credibility determinations were supported by the record,

and elected not to believe Husband's testimony with respect to these claims. *See* trial court opinion, 6/3/21 at 2-3, 7.

We similarly decline to upset the credibility determinations of the fact-finder. We have consistently explained that "a master's report and recommendation, although only advisory, is to be given the fullest consideration[,]" as the master is in the best position to observe the testimony and demeanor of the parties. ***Moran v. Moran***, 839 A.2d 1091, 1095. (Pa.Super. 2003) (citation omitted). Accordingly, Husband's aforementioned challenges to the equitable distribution scheme must fail.

Husband next argues that Master Watkins and trial court erred in failing to consider numerous factors under the Divorce Code in fashioning its equitable distribution award. Specifically, Husband contends that the fact that he held a minimum wage job and did not graduate from high school and that Wife had degree from a school in India (**Issue 3; Argument VI**); and that he was the party who had acquired and preserved the martial estate (**Issue 7; Argument II**), were not properly considered. Husband's brief at 27-29, 35-36.

Husband further contends that Master Watkins and the trial court erred in "adding new factors to its equitable distribution scheme" by improperly considering Wife's allegations of Husband's "martial misconduct" and abuse during the marriage (**Issue 9, Argument I**); and the fact that Husband failed to disclose the value of his property in India by the court-ordered deadline

(**Issue 6; Argument I**).  *Id.* at 25-27.  Husband maintains that Master Watkins and the trial court used this "nondisclosure and the alleged marital misconduct [as] reasons to award Wife an unconscionable share of the martial estate." *Id.* at 26.

Husband contends that had Master Watkins and the trial court properly applied the factors in the Divorce Code, he would have been entitled to 80% of the marital property as detailed in his exceptions.  (**Issue 8; Argument IX**).  *Id.* at 39-43.  We disagree.

This court has repeatedly explained that, "[i]n determining the propriety of an equitable distribution award [], we must consider the distribution scheme as a whole."  *Schenk v. Schenk*, 880 A.2d 633, 643 (Pa.Super. 2005).  "[W]hen a court divides the marital property, it must do so only after considering 'all relevant factors,' including eleven specific factors listed in the Divorce Code." *Teodorski v. Teodorski*, 857 A.2d 194, 199-200 (Pa.Super. 2004) (citation and internal quotation marks omitted).

> Pursuant to 23 Pa.C.S.A. § 3502(a), when fashioning equitable distribution awards, the trial court must consider:  the length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation or appreciation of marital property, value of each party's separate property, standard of living established during the marriage; economic circumstances of each party and whether

- 14 -

> the party will be serving as custodian of any dependent children.

*Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa.Super. 2004) (citation omitted). "The weight to be given to these statutory factors depends on the facts of each case and is within the [fact-finder's] discretion." *Schenk*, 880 A.2d at 643 (citations omitted).

Instantly, we find that Master Watkins expressly considered all of the relevant factors in making his recommendations as to how the parties' marital property should be distributed. *See* Third Amended Master's Report, 11/12/20. Those factors included the parties' educational background, vocational skill, employability, and future earning capacity. *Id.* at 2, 6. Master Watkins noted that although Husband is currently employed at a gas station making $7.25 per hour, he supported the family during the marriage and made a good living from the trucking business he owned. *Id.* at 2, 6-8. Master Watkins also considered the fact that Wife was a homemaker and stay-at-home mother to the parties' minor child during the marriage, had never worked full-time, and was not permitted by Husband to obtain employment. *Id.* at 2, 7.

Master Watkins also considered the duration of the marriage; the parties' respective ages, their standard of living during the marriage; and the fact that Wife's contributions during the marriage allowed Husband to develop and operate his trucking business. *Id.* at 6-9. Additionally, Master Watkins took note of the fact that Wife serves as the primary custodian to the parties'

minor child, whom she is raises alone with a minimal payment of $65 a month in child support. **_Id._** at 10.

Master Watkins expressly found that "[w]hile Husband's future earning capacity and ability to acquire capital assets is limited … his employment situation is due to an accident [that] resulted in serious criminal charges … [and the] loss of his CDL license[.]". **_Id._** at 6-7. Nonetheless, Master Watkins concluded that "Wife is in greater need than Husband" given her lack of employment history, general college degree from a foreign country, and low earning expectation. **_Id._** at 7.

Husband's contentions on appeal merely challenge the weight to be accorded the various factors, and as discussed, this matter was within the province of Master Watkins, and not within the appellate court. **_See Schenk_**, 880 A.2d at 643; **_Moran_**, 839 A.2d at 1095.

We further find no merit to Husband's contention that Master Watkins' equitable distribution scheme was improperly based upon Wife's allegations of Husband's "marital misconduct" and abuse during the marriage, nor the fact that he failed to disclose the value of his property in India by the court-ordered deadline. Master Watkins' makes no specific mention of his consideration of Husband's misconduct or abuse in his third amended report and recommendation, and the trial court specifically noted in its opinion that "[a]ny abuse by [Husband] toward [Wife] … was not considered as an independent

factor in the fashioning of [the equitable distribution] award." Trial court opinion, 6/3/21 at 6.

Additionally, Husband has provided no support in his brief for his baseless allegation that Master Watkins and the trial court utilized his nondisclosure of the value of his property in India as a reason to award Wife "an unconscionable share of the martial estate." **See** Husband's brief at 26-27. On the contrary, the record reflects that Master Watkins and the trial court gave due consideration to all of the factors set forth in Section 3502(a) in arriving at an equitable distribution scheme which, as a whole, achieved a just determination of the parties' marital property.

Accordingly, we find no abuse of the trial court's discretion in denying the bulk of Husband's exceptions to the equitable distribution scheme set forth in Master Watkins' third report and recommendation.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/04/2022