J-A08025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NOEL WALKINGTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINDA MARTIN | : | |
| | : | |
| Appellant | : | No. 555 WDA 2021 |

Appeal from the Decree Entered May 6, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 18-008014-005

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                **FILED: AUGUST 9, 2022**

Linda Martin (Wife) appeals from the trial court's decree denying her exceptions and the cross-exceptions of Noel Walkington (Husband) to the master's report and recommendation in this divorce matter.  After review, we affirm.

Husband and Wife (collectively, Parties) were married in 1986. Together, they adopted one child, M.W. (Child), who was born in October 2003.  Wife, age 67, is a self-employed psychotherapist and Husband, age 65, is a tenured college mathematics professor.  Master's Report and Recommendation, 7/30/20, at 4-5.  Both Parties are in good health.  *Id.*  The Parties separated in 2017, after thirty-one years of marriage.[1]  *Id.* at 3.  On

_____

[1] The parties stipulated that their date of separation was August 15, 2017. *See id.* at 3.

June 25, 2018, Husband filed a complaint in divorce. Since their separation, the Parties have engaged in custody and support proceedings.[2] From September 2017 through July 2018, Husband voluntarily paid Wife $4,000.00 per month in support. *Id.* at 6. After July 2018, Husband reduced his support payments to $3,500.00 per month,[3] until February 2019 when the wage attachment began. *Id.* at 6; *See* N.T. Equitable Distribution Hearing, 6/18/20, at 93, 163.

Following a two-day equitable distribution hearing, held on June 18 and 19, 2020, the master issued a report and recommendation to determine the equitable distribution of the Parties' marital property and marital debt. The master found that Husband is in a significantly better economic position than Wife for the foreseeable future, *id.* at 14, that Husband's income is guaranteed, and that Husband's tenured position provides him with medical, dental, vision, and retirement benefits. *Id.* at 14. Conversely, Wife's self-employment does not provide her with a fixed salary, benefits, or health insurance. *Id.* at 14. Although Wife received inheritances from her parents, aunt, and brother during the Parties' marriage, these funds were found to be

---

[2] On May 16, 2018, Husband filed a complaint for shared physical and legal custody of Child.

[3] Husband reduced the amount of his monthly payments to Wife at this time because Husband had paid an additional $6,600.00 in intermittent payments, $1,492.00 for the Parties' property taxes, and the cost of Child's summer camp. N.T. Equitable Distribution Hearing, 6/19/20, at 90-92, 318-19; *see* Master's Report and Recommendation, 7/30/20, at 6.

comingled with the marital estate. *Id.* at 15. Further, Wife testified that she wishes to gradually reduce her psychotherapy practice as she nears retirement age. *See* N.T. Equitable Distribution Hearing, 6/19/20, at 245.

The master valued the Parties' marital estate at $2,146,947.09, including taxable and non-taxable assets. Master's Report and Recommendation, 7/30/20, at 9. After considering the factors set forth in 23 Pa.C.S.A. § 3502(a)(1-11) of the Divorce Code, the master recommended the marital estate be distributed 60% to Wife and 40% to Husband. *Id.* at 26. As part of this distribution, Wife retained the marital residence.[4] *Id.* The master found that Husband should pay $600.00 per month in alimony to Wife until Wife reaches age 70 or Husband retires, whichever comes first. *Id.* at 24.

Wife filed exceptions to the master's report on August 14, 2020 and Husband filed cross-exceptions on September 3, 2020. Both Parties' exceptions were dismissed on April 15, 2021 without argument. The decree in divorce was entered on May 6, 2021. Wife filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court's Rule 1925(a) opinion adopted the rationale of the master's report.

On appeal, Wife presents the following questions for our review:

---

[4] The master's report states that, as of June 10, 2020, the mortgage balance on the marital residence was $50,095.00.

- 3 -

(1)    Whether the trial court erred in the valuation of the former marital residence, including by improperly speculating as to such value.

(2)    Whether the trial court erred in characterizing Wife's Key Bank account #xxx-9119 as marital property, and by incorrectly finding that the non-marital account was commingled with marital funds, which decision was contrary to the evidence presented and controlling law.

(3)    Whether the trial court erred in the characterization, classification, and valuation of Husband's interest in his family trust.

(4)    Whether the trial court erred in failing to achieve economic justice between the [P]arties with its equitable distribution award, including overvaluing the marital residence, by improperly including a non-marital bank account as marital property, by failing to provide Wife her full share of the estate as found by the [m]aster, and in failing to properly include and divide the Husband's interest in the family trust.

(5)    Whether the trial court erred in the amount of the monthly alimony award, and in failing to award alimony to meet Wife's reasonable needs.

Appellant's Brief, at 6.

Our standard of review in reviewing a trial court's equitable distribution

order is as follows:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden of misapplied or the judgment exercised was manifestly unreasonable, or the result of partially, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the proprietary of an equitable distribution award, courts must consider the distribution scheme as a whole. We

- 4 -

measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

***Morgante v. Morgante***, 119 A.3d 382, 386-87 (Pa. Super. 2015) (quoting

***Biese v. Biese***, 979 A.2d 892, 895 (Pa. Super. 2009)).

Further, this Court will not reverse determinations made in the trial court, so long as they are supported by the evidence, as it is within the province of the trial court to weigh evidence and decide credibility. ***Childress v. Bogosian***, 12 A.3d 448, 455 (Pa. Super. 2011). Although only advisory, a master's report and recommendation should be given the fullest consideration because the master can observe and assess the behavior of the parties. ***Id.*** at 456.

The relevant factors to be considered when fashioning equitable distribution awards are set forth, as follows, in 23 Pa.C.S.A. § 3502(a):

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution of dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State, and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. §§ 3502(a)(1-11).

Wife first argues that the trial court erred in valuing the Parties' marital residence at $485,000.00. Specifically, Wife argues that by adopting the master's rationale, the trial court speculated as to the value of the residence and that the value is unsupported by the record. *See* Appellant's Brief, at 18. We find that the trial court did not abuse its discretion.

The Divorce Code does not specify a particular method of valuing assets; therefore, the trial court must exercise discretion and rely on estimates, inventories, records, and appraisals submitted by both parties to come to a valuation. ***Childress***, ***supra***, at 456. When determining the value of marital property, the trial court is free to accept all, part, or none of the evidence as to the true and correct value of the property. ***Id.*** at 456.

Here, the master found that Husband and Wife purchased the marital residence in 2006. Master's Report and Recommendation, 7/30/20, at 5. Wife testified that the residence was purchased with the intent of residing in it until the Parties retired. N.T. Equitable Distribution Hearing, 6/19/20, at 245. At the hearing, both Parties submitted expert testimony from real estate

appraisers. Husband's expert testified that the fair market value of the marital residence is $536,000.00, whereas Wife's expert opined the value is $410,000.00.[5] Master's Report and Recommendation, 7/30/20, at 9. The master, however, ultimately ruled that the residence's fair market value is $485,000.00—roughly in the middle of both estimates. *Id.* This value was reached by weighing each Parties' expert testimony, as well as considering the location of the property and the increase in value over time since the home was purchased in 2006. *Id.* at 10.

The trial court concluded that "[t]he master considered the expert testimony to form a reasonable basis as to the fair market value of the residence." Trial Court Opinion, 10/8/2021, at 5. We agree. Wife's arguments essentially attack the credibility determinations of the master and trial court. This Court cannot overturn the findings of the trial court on such a basis where the record supports the master's conclusions. ***Childress***, ***supra***, at 457. This argument, therefore, is meritless.

Wife next argues that the trial court erred by characterizing Wife's Key Bank account #xxx-9119 as marital property.[6] Specifically, Wife argues that the record establishes that the account was funded with her inheritances and,

---

[5] Both experts' estimates are from 2019. The discrepancy between the two experts' estimates arises from the fact that Husband's expert included a deck area within his evaluation, whereas Wife's expert did not. Master's Report and Recommendation, 7/30/20, at 9-10.

[6] The balance of this account is $45,408.00. ***See*** Master's Report and Recommendation, 7/30/20, at 8.

thus, as a matter of law, should be deemed separate, non-marital property. Appellant's Brief, at 32. Wife points to her testimony that she transferred funds into and out of this account during the Parties' stipulated month of separation. *Id.* at 32-33; *see* N.T. Equitable Distribution Hearing, 6/19/20, at 359-63. Husband, on the other hand, argues that these transfers do not protect the funds in the bank account but, instead, demonstrate that Wife used this account during the marriage to comingle funds. Brief of Appellee, at 8-9.

The trial court concluded that the master properly found the bank account was marital property because funds in the account were comingled with marital funds. Trial Court Opinion, 10/8/2021, at 5-6. We agree. The master found Wife's testimony that the account was funded by her inheritance not credible. Master's Report and Recommendation, 7/30/20, at 8. Because the master's credibility determination is supported by the record, we discern no abuse of discretion. ***Childress, supra*** (in determining credibility issues master's findings must be given fullest consideration because master had opportunity to observe and assess testimony and overall demeanor of witnesses). Thus, we find no error or abuse of discretion.

Third, Wife argues that the trial court erred in the characterization, classification, and valuation of Husband's interest in his family trust. Specifically, Wife argues that Husband's interest in the trust vested at the time of the creation of the trust, and the increase in the value of Husband's interest is a marital asset. Appellant's Brief, at 41-43.

The master's report states that Husband is one of four beneficiaries to a family trust created by Husband's parents. The trust was created during the marriage, however Husband acquired nothing relating to the trust during the marriage. Husband's father died in 2001 and his mother died in 2015. Master's Report and Recommendation, 7/30/20, at 11. Adopting the master's report, the trial court concluded that Husband's right to his portion of the trust vested upon the death of Husband's mother in 2015, as Husband would have received no interest in the trust if he had died before his mother. Trial Court Opinion, 10/8/21, at 6. Since his mother's death in 2015, Husband and his sibling-beneficiaries have not received their interests in the trust. Husband testified that he has no knowledge of when he will receive his interest in the trust, which the master found credible. *Id.* at 6. The master concluded that Husband's interest in his family trust is non-marital property because it was acquired by bequest, devise, or descent; however, an increase in value of the trust is subject to distribution pursuant to 23 Pa.C.S.A. §§ 3501(a)-(a.1). Master's Report and Recommendation, 7/30/20, at 11.

The Divorce Code specifically exempts from the marital estate property acquired by gift, bequest, devise, or descent. *See* 23 Pa.C.S.A. § 3501(a)(3). The trial court agreed with the master that Husband's interest in the trust is non-marital property as it was acquired by gift, bequest, devise, or descent, where any increase in value of the trust is marital property subject to equitable distribution. *Id.* at 11; *see* Trial Court Opinion, 10/8/2021, at 6. Because

the value of the trust is decreasing,[7] the trial court correctly concluded that for purposes of equitable distribution, the marital value of the trust is $0.00. **Childress**, 12 A.3d at 459. Further, Wife offers no evidence regarding an increase in value of Husband's interest in the trust. Therefore, Wife's claims are meritless because there is no increase in value of Husband's interest in the trust and Husband's interest is properly deemed non-marital property.

Wife next argues that the trial court erred by failing to achieve economic justice with its equitable distribution award. Specifically, Wife argues that the trial court: (1) overvalued the marital residence; (2) improperly included a non-marital bank account as a marital asset; (3) failed to properly include and divide Husband's interest in the family trust; and (4) failed to provide Wife a full share of the marital estate. Appellant's Brief, at 51.

Wife argues that the assets awarded to each party failed to provide Wife the full amount she was entitled to under the master's ruling because there was no evidence of the appropriate tax rate, and because the retirement and

---

[7] From March 2017 to March 2020, Husband's interest in his family trust decreased from $663,534.00 USD to $557,464.00 USD. Master's Report and Recommendation, 7/30/20, at 12. The value of Husband's interest in the trust from Husband's mother's death in 2015 to March 2017 is unknown. **Id.** Husband's current expected share is $557,464.00. **Id.** These calculations were converted from New Zealand currency to American currency, as the trust was created in New Zealand where Husband's parents resided.

investment accounts are not tax effected as part of the award.[8]   Because we

have already determined that the first three claims are meritless, wife's fourth

argument that she was not provided a full share of the estate is also meritless.

This Court will only overturn an award when the trial court abused its

discretion.  ***Childress***, ***supra***.

> In the context of an equitable distribution of marital property, a
> trial court has the authority to divide the award as the equities
> presented in the particular case may require.   [E]quitable
> distribution does not presume an equal division of property and
> the goal of economic justice will often dictate otherwise. . . .  We
> look at the distribution as a whole, in light of a trial court's overall
> application of the factors enumerated at 23 Pa.C.S.A. § 3502(a).

***Schenk v. Schenk***, 880 A.2d 633, 639 (Pa. Super. 2005) (citations omitted)

(quotations omitted).

Instantly, the master awarded 60% of the marital estate to Wife.

Master's Report and Recommendation, 7/30/20 at 15.   Regarding rollover

from Husband's TIAA-CREF account, the master reduced the rollover to

equitably account for Husband's prior overpayment stating:

> [T]he traditional method of recouping support overpayments is to
> reduce the monthly support amount by a sufficient amount so that
> the overpayment is exhausted when the support matter
> terminates.  Child will be emancipated in June 2022, thus, this
> overpayment would have to be exhausted in 24 months.  This
> Master finds this to be inequitable, as Wife's support would be
> reduced by $1,529.56 per month.

---

[8] The amount to be rolled over from Husband's TIAA-CREF account was
$360,000.00, which was reduced by $36,709.00 to account for Husband
overpaying Wife $31,921.17.00 in alimony *pendente lite*.  Master's Report and
Recommendation, 7/30/20, at 27.

Master's Report and Recommendation, 7/30/20, at 21.

We agree with the trial court that the methods used by the master to allocate the Parties' distribution awards *are* equitable. Additionally, Wife's argument that there was no evidence of an appropriate tax rate is meritless. The master considered the Parties' ages and incomes to calculate taxable assets. *Id.* at 21. Wife's argument that none of the retirement and investment accounts was tax effected is also meritless because Wife nonetheless received 76% of nontaxable assets (in the amount of $683,974.00),[9] while Husband was awarded $260,650.00 in nontaxable assets. *Id.* at 7-9. This appropriately aligns with the master's recommendation of allocating approximately 60% of the marital estate to Wife and approximately 40% to Husband.

Further, Wife's argument that the trial court failed to credit her for making mortgage payments on the marital residence fails. Appellant's Brief, at 54. Looking at the equitable distribution scheme as a whole, the trial court did not err by affirming the master's recommendation and not crediting Wife for making mortgage payments. The master's distribution achieves the objective of effectuating economic justice between the Parties and is a just determination of the Parties' property rights. *Schenk*, *supra*. This is especially true where Wife has exclusively resided at the marital residence

_____

[9] As Husband notes, Wife actually received "the lion's share of the nontaxable assets, including, but not limited to, the equity in the house of approximately $400,000.00"—ultimately resulting in Wife receiving approximately 76% of the nontaxable assets in the martial estate. Brief of Appellee, at 13.

since the Parties' separation. Master's Report and Recommendation, 7/30/20, at 7. Therefore, the trial court had discretion in determining, in light of the distribution scheme, that Wife was not entitled to credit for mortgage payments. We find no abuse of discretion.

Lastly, Wife argues that the trial court erred in fixing the amount of her monthly alimony award. Specifically, Wife claims that the award does not meet her reasonable needs because the trial court failed to recognize the duration of the Parties' marriage and the standard of living that the Parties established. Appellant's Brief, at 62.

It is the burden of the party seeking alimony to prove his or her entitlement to support. *Hicks v. Kubit*, 758 A.2d 202, 205 (Pa. Super. 2000).

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but[,] rather[,] to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy, and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employment skill.

*Teodorski v. Teodorski*, 857 A. 2d 194, 200 (Pa. Super. 2004) (citation omitted).

When determining issues of alimony, courts are required to consider all relevant factors, including those set forth in 23 Pa.C.S.A. § 3701(b).  ***Lawson v. Lawson***, 940 A,2d 444, 447 (Pa. Super. 2007).  These factors include:

> (1)    The relative earnings and earning capacities of the parties.
> (2)    The ages and the physical, mental[,] and emotional conditions of the parties;
> (3)    The sources of income of both parties, including but not limited to, medical, retirement, insurance[,] or other benefits;
> (4)    The expectancies and inheritances of the parties.
> (5)    The duration of the marriage.
> (6)    The contribution by one party to the education, training[,] or increased earning power of the other party.
> (7)    The extent to which the earning power, expenses[,] or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
> (8)    The standard of living of the parties established by marriage.
> (9)    The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
> (10)  The relative assets and liabilities of the parties.
> (11)  The property brought to the marriage by either party.
> (12)  The contribution of a spouse as homemaker.
> (13)  The relative needs of the parties.
> (14)  [Marital misconduct of either of the parties during marriage].
> (15)  The Federal, State[,] and local tax ramifications of the alimony award.
> (16)  Whether the party seeking alimony lack sufficient property[.]
> (17)  Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b).

Here, the trial court adopted the master's recommendation of alimony. After analyzing the section 3701(b) factors as to each party, the master

concluded that the Parties, indeed, had a "lengthy marriage during which Husband consistently out-earned wife." Master's Report and Recommendation, 7/30/20, at 22. Additionally, the master found that Husband and Wife lived a comfortable, upper-middle class lifestyle with no debt from obtaining legal counsel. *Id.* at 15.

Regarding the relative needs of Wife, the master found that Wife's budget of $12,309.00 per month was unreasonable. *Id*. at 22. After subtracting various expenses that are not appropriately accounted for by alimony,[10] the master concluded that Wife's monthly reasonable needs are $5,100.00, *id.* at 23, and that where Wife's monthly net income is $4,516.28, the court determined that a monthly alimony payment of $600.00 by Husband is appropriate until Wife can begin to collect her Social Security benefits at age 70, or when Husband retires. *Id.* at 23-24. The trial court deemed this award appropriate, emphasizing that Wife's budget cannot account for expenses accrued because of the Parties' Child, where Wife also receives child support payments. Trial Court Opinion, 10/8/2021, at 8. In addition, Wife's budget cannot reflect non-recurring expenses. *Id.* Therefore, because the trial court adequately considered the factors enumerated in section 3701(b),

---

[10] In her alimony budget, Wife included expenses for Child which the master removed because Husband pays child support. *See* Master's Report and Recommendation, 7/30/20, at 22. Wife also improperly included one-time expenses in her budget, such as the cost of a new air conditioner and heater for the marital residence after Parties separated. *Id.* at 23.

the award of alimony in this case is appropriate and the trial court did not abuse its discretion. **See Teodorski**, **supra**; **Lawson**, **supra**.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2022